UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FEDERAL INSURANCE COMPANY,

                Plaintiff,

         v.

SAFENET, INC., ANDREW E. CLARK,
WALTER W. STRAUB, THOMAS A.
BROOKS, IRA A. HUNT, Jr., BRUCE R.
THAW, ARTHUR L. MONEY, CAROLE
ARGO, KENNETH MUELLER, SHELLEY
A. HARRISON, and ANTHONY CAPUTO,

                Defendants.

Civ. Action No. 09-CV-7863 (DC)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS OR STAY**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ...........................................................................................................1

II.     ARGUMENT ................................................................................................................2

        A.      Federal's Rescission Claim is Ripe for Adjudication ..............................................2

                1.      Elements of Rescission .................................................................................3

                2.      Imputation of Knowledge and Severability ................................................5

                3.      Courts Have Rescinded Excess Policies Prior to Exhaustion of the
                        Underlying Insurance .................................................................................6

                4.      The Ripeness of Federal's Claim Does not Depend on Whether
                        SafeNet Indemnifies Argo and Caputo, as the Excess Policy is
                        Void as to SafeNet and Argo ....................................................................7

        B.      Federal Has Brought a Coercive Claim for Rescission and a Closely-
                Associated Declaratory Relief Claim, and Defendants Have Not
                Established an "Important Countervailing Interest" Justifying this Court's
                Abstention ..............................................................................................................8

        C.      Plaintiffs Have Made no Showing that Indispensable Parties Have Not
                Been Joined ..........................................................................................................10

                1.      The Primary Insurer National Union and the Dismissed Defendants
                        are Not Indispensable Parties ..................................................................10

                2.      The Court May Proceed without Joining the Dismissed Defendants
                        and National Union .................................................................................12

III.    CONCLUSION ...........................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Certain Underwriters at Lloyds' v. St. Joe Minerals Corp.*,
    90 F.3d 671 (2d Cir. 1995)...................................................................................7

*City of Littleton v. Commercial Union Assurance Cos.*,
    133 F.R.D. 159 (D. Colo. 1990) ........................................................................12

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976).............................................................................................9

*County of Allegheny v. Frank Mashuda Co.*,
    360 U.S. 185 (1959).............................................................................................9

*Eljec Indust. V. Aetna Cas. & Sur. Co.*,
    1994 U.S. Dist. LEXIS 6167 (N.D. Ill. May 9, 1994) .......................................13

*Federal Insurance Co. v. Homestore, Inc.*,
    No. 02 Civ. 7304 R (C.D. Cal. May 5, 2003), *aff'd* 144 Fed. Appx. 641 (9th Cir.
    2005) ................................................................................................................6, 7

*Gov't Employees Ins. Co. v. Dizol*,
    133 F.3d 1220 (9th Cir. 1998) (en banc) ............................................................9

*In re Adoption Nos. T00130003*,
    805 A.2d 254 (Md. 2002) ...................................................................................4

*In re HealthSouth Corp.*,
    308 F. Supp. 2d 1253 (N.D. Ala. 2004)..............................................................3

*Lerner v. Lerner Corp.*,
    750 A.2d 709 (Md. Ct. Spec. App. 2000) ..........................................................4

*Nationwide Mut. Ins. Co. v. McBriety*,
    230 A.2d 81 (Md. 1967) .................................................................................3, 4

*R.R. Street & Co., Inc. v. Vulcan Materials Co.*
    569 F.3d 711 (7th Cir. 2009) ..............................................................................9

*Reinsurance Co. v. Aetna Cas. & Sur. Co.*,
    590 F. Supp. 187 (S.D.N.Y. 1984).....................................................................7

*Rhone-Poulenc Inc. v. Int'l Ins. Co.*
    71 F.3d 1299 (7th Cir. 1995) ............................................................................13

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999)..................................................................................13

*Ryan v. Brady*,
    366 A.2d 745 (Md. Ct. Spec. App. 1976) .................................................4

*Shell Oil Co. v. Aetna Cas. & Sure Co.*,
    158 F.R.D. 395 (N.D. Ill. 1994).................................................................12

*Silberstein v. Massachusetts Mut. Life Ins. Co.*,
    55 A.2d 334 (Md. 1947) ............................................................................4

*St. Paul Fire Ins. v. Univ. Builders Supply*,
    409 F.3d 73 (2d. Cir. 2005).......................................................................13

*United States Underwriters Ins. Co. v. Kum Gang, Inc.*,
    443 F. Supp. 2d 348 (E.D.N.Y. 2006) ......................................................7

*Whaley v. Maryland State Bank*,
    473 A.2d 1351 (Md. Ct. Spec. App. 1984) ..............................................4

*Witco v. Travelers Indem. Co.*,
    1994 U.S. Dist Lexis 20781 (D.N.J. Apr. 6, 1994)...................................13

**STATUTES**

28 U.S.C. § 2201................................................................................................7

## I.   __INTRODUCTION__

Defendants SafeNet, Inc. ("SafeNet"), Carole Argo, and Anthony Caputo ("Defendants") have moved to dismiss a complaint different than the one Federal Insurance Company ("Federal") actually filed.

In Defendants' Motion to Dismiss or Stay (the "Motion"), Defendants argue that Federal's complaint for declaratory relief regarding coverage under the Excess Policy issued to Defendants by Federal is "unripe" because the underlying Primary Policy has not been exhausted.  This misrepresents Federal's complaint.  Federal has in fact asserted a claim for *rescission* of the Excess Policy, in addition to claims for declaratory relief to define the consequences of the rescission.

The elements of the claim for rescission are (1) the existence of the Excess Policy, (2) a material misrepresentation in the Application for the Excess Policy, and (3) Federal's reliance on that material misrepresentation.  "Exhaustion of the underlying policy" is not an element of a claim for rescission, and there is no element of a rescission claim that requires that this Court determine the coverage available under the Primary Policy.

Federal's claim for rescission has nothing to do with exhaustion, and nothing to do with the Primary Policy.  The Excess Policy incorporates certain of the Primary Policy's terms, but that does not mean that an action to rescind the distinct and separate Excess Policy requires an adjudication regarding the underlying Primary Policy.   Federal's claim is ripe, regardless of whether the Primary Policy is exhausted.

Not surprisingly, Defendants fail to cite a single authority establishing that an excess insurer such as Federal cannot adjudicate a claim for rescission prior to the exhaustion of the underlying insurance.  None of Defendants' authorities purportedly establishing that a declaratory relief claim is unripe apply to this matter, as none of these cases address the ripeness

- 1 -

of an excess insurer's rescission claim.  By contrast, this Opposition demonstrates that courts have adjudicated, and granted, claims for rescission of excess insurance policies, even where the underlying insurance had not been exhausted.

In addition, Plaintiffs have made no showing that underlying insurer National Union or Andrew E. Clark, Walter W. Straub, Thomas A. Brooks, Iran A. Hunt, Bruce R. Thaw, Kenneth Mueller, and Shelley A. Harrison (the "Dismissed Defendants") are indispensable parties. Defendants' arguments regarding "indispensable and necessary parties" suffer from the same infirmity as their "exhaustion" argument, in that Defendants argue as if Federal is only seeking declaratory relief regarding coverage under the Excess Policy.  Underlying insurer National Union is not an indispensable party to Federal's claim for rescission, as Federal's claim for rescission does not require this Court to probe National Union's coverage obligations and will not dictate National Union's own right to rescind, should National Union choose to do so.   The Dismissed Defendants were added to the suit as a courtesy, and their presence in this litigation would have no bearing on whether Federal is able to rescind the Excess Policy.   Defendants cite nothing but inapposite law in support of their "indispensable parties" argument, and this is not enough to avoid adjudication of Federal's complaint as-filed.  The Motion should be dismissed.

## II.   ARGUMENT

### A.   Federal's Rescission Claim is Ripe for Adjudication

Defendants argue that "Federal's liability to the Defendants is Contingent on Exhaustion of the Primary Policies, Which Has Not Occurred." (Motion, p. 12).  However, Federal's action is not about when coverage attaches under the Excess Policy, but whether the Excess Policy is void.  Even if a declaratory relief claim regarding coverage under the Excess Policy may be unripe absent exhaustion of the Primary Policy, that is not what Federal's claim is about.  Rather, Federal seeks to pretermit any coverage disputes by obtaining a ruling (1) declaring that the

LA 51245642v4

Excess Policy is void as to Defendants SafeNet and Argo and (2) delineating the consequences of the rescission.[1]  Though defendants endeavor to characterize Federal's position as "contingent" upon the exhaustion of the Primary Policy, in fact, Federal's right to rescission has nothing to do with the exhaustion of the Primary Policy, and does not depend on exhaustion of the Primary Policy.  There is no outstanding contingency that renders the claim unripe.

Defendants' own correspondence with Federal indicates that Federal's claim is ripe and that a live controversy exists between the parties.  Pursuant to this Court's suggestion, Federal attempted to secure Defendants' stipulation and agreement to stay this action pending resolution of the underlying litigation.  However, a principal sticking point was Defendants' refusal to agree that they would not enter into a stipulated judgment or settlement in the Underlying Litigation which would exhaust the primary policy and implicate Federal's Excess Policy until after there had been an adjudication of the issues raised in this lawsuit.  If Federal were to agree to a stay of the action without such commitment from the Defendants, then its purported coverage obligations under the Excess Policy could be triggered immediately, at any time, without notice to Federal, by the type of stipulated judgment or settlement they have refused to rule out. (Declaration of Richard R. Johnson, ¶¶ 2-3.)  Having refused to rule out such a stipulated judgment or settlement, Defendants should not be heard to argue that this action is unripe.

1.      Elements of Rescission

Generally, an insurance policy may be voided if the insured makes a material misrepresentation of fact in the application. *Nationwide Mut. Ins. Co. v. McBriety*, 230 A.2d 81

---

[1] It is not clear from Defendants' Motion whether they agree with Federal that the Excess Policy is void.  If Defendants do not agree with Federal, then they should not be heard to argue that there is no live case or controversy.  *See, e.g., In re HealthSouth Corp.*, 308 F. Supp. 2d 1253, 1267 (N.D. Ala. 2004) (a justiciable controversy existed in that the parties disagreed on the legal effect of the severability clause on the carriers' rights under the applicable rescission statute).

(Md. 1967).[2]  Whether the misrepresentation is material "depends upon whether the misrepresentation of the true facts would reasonably have affected the determination of the acceptability of the risk." *Id.*  The misrepresentation need not have been made with intent to deceive – an "innocent" misrepresentation will suffice.  *See e.g. In re Adoption Nos. T00130003*, 805 A.2d 254, 262 (Md. 2002) (to permit rescission of a contract for misrepresentation, the plaintiff must show that a false representation of material fact was made and was actually relied upon by the plaintiff; unlike in a tort action for deceit or fraud, the maker of the representation does not need to know of its actual or probable falsity and does not have to act with an intent to deceive.); *Nationwide Mut. Ins. Co. v. McBriety*, 230 A.2d 81, 84-85 (Md. 1967) *Silberstein v. Massachusetts Mut. Life Ins. Co.*, 55 A.2d 334 (Md. 1947); *Whaley v. Maryland State Bank*, 473 A.2d 1351 (Md. Ct. Spec. App. 1984); *Ryan v. Brady*, 366 A.2d 745 (Md. Ct. Spec. App. 1976).

There should be no "ripeness" concerns with Federal's ability to void coverage under the Excess Policy.  Federal has pled the existence of the Excess Policy, material misrepresentations in the Application for the Excess Policy, an admission of knowledge of those misrepresentations, and Federal's reliance on those misrepresentations.  None of these elements depend on any contingencies, and none of them have anything to do with exhaustion of the National Union Policy.  Perhaps Defendants are under the impression that rescission is only an affirmative defense, and not a separate cause of action.  However, Maryland courts recognize rescission as a cause of action, as well as an affirmative defense.  *Lerner v. Lerner Corp.,* 750 A.2d 709, 712 (Md. Ct. Spec. App. 2000).  Federal need not wait for Defendants to make a claim for coverage or sue before bringing a claim for rescission.

---

[2] It is Federal's understanding, based on the location of the risk at issue, that Maryland law applies to this dispute.  However, choice-of-law does not appear to be relevant to this motion, as there is (to Federal's knowledge) no law from any jurisdiction that conditions an insurer's right to rescind an excess policy on the exhaustion of underlying insurance.

2.     Imputation of Knowledge and Severability

Federal has alleged that Carole Argo, SafeNet's former Chief Financial Officer ("CFO"), pled guilty to securities fraud and in so doing, admitted that she knew of the material misrepresentations in the Application.  Therefore, the Excess Policy is void as to her and as to SafeNet.  The relevant endorsement provides that "in the event that the particulars and statements contained in the Application are not accurate and complete, <u>then this Policy shall be void as to any Insured who knew</u> as of the inception date of the Policy Period <u>of the facts not accurately and completely disclosed in the Application</u> (whether or not that Insured actually knew the facts were not accurately disclosed in the Application) <u>and as to any Insured to whom such knowledge is imputed</u>."  (Endorsement No. 4 [emphasis added].)  Since Carole Argo was the Chief Financial Officer of SafeNet, her knowledge is imputed to all Insureds, including SafeNet and the Insured Persons.  *Id.*  While the endorsement contains a  carve-out providing coverage for Non-Indemnifiable Loss incurred by Insured Persons who demonstrate that they had no knowledge of the matters misrepresented in the Application, that carve-out is not available to SafeNet.  Thus, the Excess Policy is simply void in its entirety as to both Carole Argo and SafeNet, by operation of Ms. Argo's guilty plea.

Other Insureds may still have coverage, and while this action will establish a mechanism as to the coverage available to the other Insured Persons, their presence is not necessary in this actions and their rights will not be prejudiced by this action.  Specifically, Endorsement No. 4 further provides that ""[n]otwithstanding the foregoing [knowledge and imputation provisions], this policy shall provide coverage, subject to the policy's terms, conditions, and exclusions, for any Non-Indemnifiable Loss of any Insured Person to whom knowledge is imputed pursuant to [the knowledge and imputation provisions], provided that such Insured Person did not have knowledge of the facts that were not accurately and completely disclosed."  Pursuant to this

provision, any Insured Persons who ultimately determine to make a claim against the Excess Policy for Non-Indemnifiable Loss, notwithstanding the fact that the Excess Policy is void as to Ms. Argo and SafeNet, must demonstrate that they did not have knowledge of the facts that were misrepresented in the Application.  However, there is nothing that such Insured Persons could possibly do, in this action, to alter the fact of Ms. Argo's guilty plea, or the effect of that plea on the validity of the Policy.

Federal is loath to belabor the obvious, but in light of Defendant's Motion, it seems necessary to do so.  Whether insurance coverage under the Excess Policy is void depends in no way on whether the Primary Policy is exhausted.  Exhaustion is not a necessary element of a cause of action for rescission, or even a related element.  The very concept of rescission is that the policy in question is void as to the affected parties.  It is nonsensical to impose an underlying "exhaustion" requirement onto a cause of action that voids the Excess Policy altogether.  It is nonsensical to impose an underlying "exhaustion" requirement onto a cause of action that voids the Excess Policy altogether.  Exhaustion of the Primary Policy may eventually occur, or not occur  –  it makes no difference when the Excess Policy itself is void based on Carole Argo's guilty plea.  The Excess Policy was voidable the moment the guilty plea was entered.

3.     Courts Have Rescinded Excess Policies Prior to Exhaustion of the Underlying Insurance

Because rescission has nothing to do with exhaustion, courts have adjudicated — and granted — claims for rescission brought by excess insurers, even when the underlying policy had not been exhausted.  *See, e.g., Federal Insurance Co. v. Homestore, Inc*., No. 02 Civ. 7304 R (C.D. Cal. May 5, 2003), *aff'd* 144 Fed. Appx. 641 (9th Cir. 2005) (granting excess insurer's

summary judgment motion for rescission even though the underlying policy had not been exhausted).[3]

Defendants fail to cite a single case where an excess carrier's claim for rescission was found to be unripe because the underlying insurance had not been exhausted.  At page 13 of the Motion, Defendants cite *Certain Underwriters at Lloyds' v. St. Joe Minerals Corp.*, 90 F.3d 671 (2d Cir. 1995) and *Reinsurance Co. v. Aetna Cas. & Sur. Co.*, 590 F. Supp. 187, 191-92 (S.D.N.Y. 1984) for the proposition that "contingent excess policies are not ripe for adjudication under Section 2201."  However, neither of these cases involves a claim for rescission of an excess policy, and Federal's right to rescind the Excess Policy is not "contingent" upon exhaustion, or any other future or potential event.

Similarly, Defendants cite *United States Underwriters Ins. Co. v. Kum Gang, Inc.*, 443 F. Supp. 2d 348 (E.D.N.Y. 2006) for the proposition that if this Court granted Federal's claim for declaratory relief as to its obligations under the Excess Policy, such a declaration would be rendered advisory if the Primary Insurer ultimately pays less than the full amount under the Primary Policies.  Once again, *United States Underwriters Ins. Co.* does not involve a claim for rescission.  Defendants' authorities are inapposite and have no bearing on the ripeness of Federal's cause of action.

4.      The Ripeness of Federal's Claim Does not Depend on Whether SafeNet Indemnifies Argo and Caputo, as the Excess Policy is Void as to SafeNet and Argo

Defendants also allege that Federal's claim is unripe as "Federal's Liability to Defendants Caputo and Argo Has not Been Triggered" because

---

[3] The District Court's opinion in *Federal Insurance Co. v. Homestore, Inc.* is unpublished.  For the convenience of the Court and the parties, a courtesy copy of the Statement of Uncontroverted Facts and Conclusions of Law adopted by the Court is attached hereto as Exhibit A.

> [Federal's] coverage obligations toward Defendants Caputo and Argo is
> contingent on them not being indemnified by SafeNet itself.  As Federal has not
> alleged (and cannot allege) that SafeNet either has not or will not continue to meet
> its indemnification obligations to defendants Caputo and Argo, Federal's claims
> against them should be dismissed.

(Opposition, p. 14.)

This is incorrect and misleading. Given that the Excess Policy is void as to Argo and

SafeNet, issues regarding exhaustion under the Primary Policy and SafeNet's indemnification of

the Insureds are irrelevant.

**B.      Federal Has Brought a Coercive Claim for Rescission and a Closely-Associated Declaratory Relief Claim, and Defendants Have Not Established an "Important Countervailing Interest" Justifying this Court's Abstention**

Defendants urge that this Court exercise is discretion under the declaratory judgment act

and decline to adjudicate Federal's claim. (Motion, p. 16.)   Defendants' argument applies the

wrong standard for abstention and mischaracterizes Federal's complaint.  Defendants attempt to

characterize this litigation as a coverage action, as opposed to a claim for rescission.  Federal has

alleged claims related to coverage to encompass the whole of the dispute between the parties, but

the gravamen of Federal's claim is for rescission, which is a coercive claim.  Federal's

declaratory relief claim is inextricably intertwined with the claim for rescission, as Federal has

asked this Court to provide declaratory relief outlining the consequences of the rescission.

Under what is known as the *Wilton/Brillhart* abstention doctrine, district courts possess

significant discretion to dismiss or stay claims seeking declaratory relief, even though they have

subject matter jurisdiction over such claims.  *R.R. Street & Co., Inc. v. Vulcan Materials Co*.

569 F.3d 711, 713 (7th Cir. 2009).  However, where a non-frivolous coercive claim, such as

Federal's claim for rescission, is coupled with a claim for declaratory relief, the *Wilson/Brillhart*

abstention standard does not apply.  *Id.*  Instead, federal courts are to apply the more permissive

standard articulated in *Colorado River Water Conservation Dist. v. United States*:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.  Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."

424 U.S. 800, 813 (1976), quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-189 (1959); *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1226 n.6 (9th Cir. 1998) (en banc) ("Because claims of bad faith, breach of contract, breach of fiduciary duty and rescission provide an independent basis for federal diversity jurisdiction, the district court is without discretion to remand or decline to entertain these causes of action. Indeed, the district court has a 'virtually unflagging' obligation to exercise jurisdiction over these claims.")

It falls on Defendants to establish an "important countervailing interest" justifying this Court's refusal to adjudicate this case.  Defendants have not met, and cannot meet, this significant burden.  Defendants argue that adjudicating Federal's claim will "do little to resolve the issues raised in its Complaint" and "require the resolution of a 'collateral legal issue … namely, the issues of whether the Primary Insurer is obligated to pay the full amount available under the Primary Policy and whether defendants Caputo, Argo, and the Dismissed Defendants will experience any loss that SafeNet does not indemnify."  These are red herrings.  Again, Federal's ability to rescind the Excess Policy does not depend on whether National Union is obligated to pay the full amount of the Primary Policy.  As the Excess Policy is void as to SafeNet, it does not matter whether SafeNet ultimately indemnifies Caputo, Argo, or the Dismissed Defendants.

Additionally, the Court's adjudication of Federal's claims will have no impact on the Defendants' ability to defend themselves in the Underlying Litigation, as all the facts relating to Federal's claim (such as Carole Argo's guilty plea) have already been admitted.

**C.**     **Plaintiffs Have Made no Showing that Indispensable Parties Have Not Been Joined**

        1.     The Primary Insurer National Union and the Dismissed Defendants are Not Indispensable Parties

Defendants employ the same sleight of hand in their "indispensable parties" arguments, in that Defendants characterize Federal's action as a coverage action, as opposed to an action primarily based on rescission with an attendant declaratory relief claim to define the consequences of that rescission.

In actuality, Federal is not asking for any relief with respect to primary insurer National Union.   Federal does not seek, and is not required to seek, a "determin[ation] of the rights of the obligations of the Primary Insurer [National Union]" (bracketed material added).   Rather, Federal's action seeks rescission of its own *Excess Policy* as to SafeNet and Argo.   As Defendants correctly state, Federal is not a party to the Primary Policy.   There is no privity of contract between Federal and National Union.   The Excess Policy incorporates certain of the Primary Policy's terms, namely, the definition of "Application" and the "Severability the Application" Endorsement.   This does not mean that Federal is required to drag National Union into this action, or that a determination as to Federal's unique right to rescind prejudices National Union's rights.

As far as Federal knows, National Union has *not* moved for adjudication on the issue of rescission, but, as established in the Complaint, Federal has been diligently pursuing the option of rescission since Federal learned of Argo's guilty plea. (Complaint, ¶¶ 32-36.)   Federal's position vis-à-vis rescission of the Excess Policy may be different from National Union's

- 10 -

position vis-à-vis rescission of the Primary Policy, as different defenses to rescission may apply to National Union.  If this Court makes an adjudication regarding the language the Excess Policy and Primary Policy have in common, such adjudication will be persuasive authority in any action commenced by or against National Union, but will not bind National Union or impinge upon its rights any more than any other court's interpretation of similar language in another policy binds National Union or impinges on National Union's rights.

Defendants make no showing as to why the Dismissed Defendants are indispensable. Defendants have not alleged that any of the Dismissed Defendants have made claims for coverage.  Defendants have not alleged, and cannot allege, that any action these Dismissed Defendants could take in this litigation would change the terms of the Excess Policy or the fact that Argo has pled guilty.  The Dismissed Defendants were only added to this action as a courtesy, and are not "indispensable" to this litigation.[4]

In sum, Defendants offer no authority for the proposition that National Union and the Dismissed Defendants are indispensable.  Every authority cited in the Motion is inapposite. None deal with rescission.  *Shell Oil Co. v. Aetna Cas. & Sure Co.*, 158 F.R.D. 395, 400 (N.D. Ill. 1994) involves an insured's claim for coverage under multiple insurance policies, not an insurer's claim to rescind a policy.  *Shell* merely stands for the proposition that when an insured sues an excess insurer for *coverage* under an excess policy and coverage depends on whether the underlying policy is exhausted, the underlying insurers may be indispensable parties.  However, as set forth above, Federal's claim for rescission does not depend on the exhaustion of, or even the validity of, the Primary Policy, so the logic of *Shell* does not apply. In *City of Littleton v.*

---

[4] The "Company Authorization Clause" of the Excess Policy authorizes SafeNet, who *is* a party to this litigation, to "act on behalf of all the Insureds with respect to the giving and receiving of notice of claim of termination" such as this suit.

*Commercial Union Assurance Cos*., 133 F.R.D. 159 (D. Colo. 1990) an insured brought suit against its primary and excess insurers to determine the extent of coverage.  Two primary insurers, "CIRSA" and "GN,"  were not joined in the suit.  The Court determined that GN and CIRSA were indispensable to an adjudication of coverage under the excess policies because the excess insurers' liability was dependent on a determination of whether primary insurer's policies provided coverage.  *Id.* at 162-163.  By contrast, Federal's right to rescind is *not* dependent on whether the Primary Policy provides coverage.  Furthermore, *Littleton v. Commercial Union Assurance Cos.* does not support Defendants' argument that, by seeking to rescind its own policy, Federal is somehow impinging on the rights of absent parties, as the *Littleton Court* noted that "any declaration on [the absent insurers'] liability would not bind them[.]"

*Witco v. Travelers Indem. Co.*, 1994 U.S. Dist Lexis 20781 at *21 (D.N.J. Apr. 6, 1994) *Rhone-Poulenc Inc. v. Int'l Ins. Co.* 71 F.3d 1299, 1302 (7th Cir. 1995); *and Eljec Indust. V. Aetna Cas. & Sur. Co.*, 1994 U.S. Dist. LEXIS 6167 (N.D. Ill. May 9, 1994) are all similarly distinguishable.  None of these opinions involve rescission, and each of these cases involve situations where an insurer's cause of action or defense is dependent on whether the claimed loss was covered by the underlying policy.  That is not the case here.

> 2. The Court May Proceed without Joining the Dismissed Defendants and National Union

Anticipating that Defendants might attempt to join National Union, a New York resident for purposes of diversity jurisdiction, Federal voluntary dismissed the dispensable Dismissed Defendants, including Mr. Bruce Thaw, whose presence would disrupt the complete diversity of the parties if National Union were joined.  This Court has the power to allow a dispensable party to be dropped at any time, even after judgment has been rendered.  *St. Paul Fire Ins. v. Univ. Builders Supply*, 409 F.3d 73, 81 (2d. Cir. 2005).  When, as here, a party takes objection to the court's jurisdiction by reason of the citizenship of some of the parties, if the interests of the

- 12 -

parties destroying diversity are severable, and a decree without prejudice to their rights can be made, the jurisdiction of the court should be retained and the matter dismissed as to the non-diverse defendants.  *St. Paul Fire Ins. v. Univ. Builders Supply*, 409 F.3d 73, 81 (2d. Cir. 2005).[5]

**III.**          **CONCLUSION**

Defendants have failed to cite a single authority supporting their contentions that Federal's claim is unripe or that "indispensable" parties should be, but cannot be, joined in this action.  Federal respectfully requests that Defendants' Motion be denied.


Dated:  March 16, 2010            /s/ Michael F. Perlis
                                  Michael F. Perlis

                                  Michael F. Perlis; mperlis@stroock.com
                                  Richard Johnson (pro hac vice); rjohnson@stroock.com
                                  Rachael Shook (pro hac vice); rshook@stroock.com
                                  STROOCK & STROOCK & LAVAN LLP
                                  *Attorneys for Plaintiff Federal Insurance Company*
                                  2029 Century Park East
                                  Los Angeles, California 90067
                                  Phone: 310-556-5800; Fax: 310-556-5959

                                  180 Maiden Lane
                                  New York, New York 10038
                                  Phone: 212-806-5400; Fax: 212-806-2006

---

[5] Defendants' filing of their Motion moots the arguments raised in Defendants' pre-Motion letter regarding a purported lack of personal jurisdiction over certain defendants. *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584 (1999) (challenge to personal jurisdiction waived if not raised in motion to dismiss).

LA 51245642v4