**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, | ) | |
| | ) | Civ. Action No. 09-CV-7863-NRB |
| Plaintiff, | ) | |
| | ) | **ANTHONY A. CAPUTO'S** |
| v. | ) | **ANSWER AND COUNTER-CLAIMS** |
| | ) | **FOR DECLARATORY RELIEF** |
| SAFENET, INC.; et al. | ) | **PURSUANT TO 28 U.S.C. § 2201 AND** |
| | ) | **BREACH OF CONTRACT** |
| Defendants. | ) | |
| | ) | **[JURY TRIAL DEMANDED]** |
| _____ | ) | |

<u>**ANTHONY A. CAPUTO'S ANSWER, AFFIRMATIVE DEFENSES AND**</u>
<u>**COUNTERCLAIMS**</u>

Pursuant to Federal Rule of Civil Procedure 8(b), Defendant, Anthony A. Caputo, hereby

answers the allegations of Plaintiff, Federal Insurance Company's ("Federal") Complaint for

Declaratory Relief Pursuant to 28 U.S.C. § 2201 (the "Complaint") and respectfully alleges as

follows:

**I.      THE PARTIES**

1.      Mr. Caputo admits the averment of paragraph 1 of the Complaint.

2.      Mr. Caputo admits the averment of paragraph 2 of the Complaint.

3.      Mr. Caputo neither admits nor denies the averments of paragraph 3 of the

Complaint, based on the dismissal of Defendant Andrew E. Clark from this action following the

filing of the Complaint.

4.      Mr. Caputo neither admits nor denies the averments of paragraph 4 of the Complaint, based on the dismissal of Defendant Walter W. Straub from this action following the filing of the Complaint.

5.      Mr. Caputo neither admits nor denies the averments of paragraph 5 of the Complaint, based on the dismissal of Defendant Thomas A. Brooks from this action following the filing of the Complaint.

6.      Mr. Caputo neither admits nor denies the averments of paragraph 6 of the Complaint, based on the dismissal of Defendant Ira A. Hunt, Jr. from this action following the filing of the Complaint.

7.      Mr. Caputo neither admits nor denies the averments of paragraph 7 of the Complaint, based on the dismissal of Defendant Bruce R. Thaw from this action following the filing of the Complaint.

8.      Mr. Caputo neither admits nor denies the averments of paragraph 8 of the Complaint, based on the dismissal of Defendant Arthur L. Money from this action following the filing of the Complaint.

9.      Mr. Caputo admits the truth of the allegations set forth in paragraph 9 of the Complaint.

10.     Mr. Caputo neither admits nor denies the averments of paragraph 10 of the Complaint, based on the dismissal of Defendant Kenneth Mueller from this action following the filing of the Complaint.

11.     Mr. Caputo admits the truth of the allegations set forth in paragraph 11 of the Complaint.

12.     Mr. Caputo neither admits nor denies the averments of paragraph 12 of the Complaint, based on the dismissal of Defendant Shelley A. Harrison from this action following the filing of the Complaint.

13.     Mr. Caputo neither admits nor denies the averments of paragraph 13 of the Complaint, which set forth legal conclusions as to which no response is required.

## II.     JURISDICTION AND VENUE

14.     Paragraph 14 of the Complaint states legal conclusions as to which no responses are required.

15.     Paragraph 15 of the Complaint states a legal conclusion as to which no response is required.  If and to the extent a response is deemed required Mr. Caputo states that he is without knowledge or information sufficient to form a belief about the allegations set forth in paragraph 15 of the Complaint.

16.     Paragraph 16 of the Complaint states legal conclusions as to which no response is required.

## III.     FACTUAL BACKGROUND

## A.     The Insurance Policies

17.     Mr. Caputo admits the truth of the allegations set forth in paragraph 17 of the Complaint.

18.     Mr. Caputo admits that paragraph 18 of the Complaint accurately quotes a portion of the Insuring Agreement of the Initial Excess Policy, but denies that that Initial Excess Policy applies to the Claims at issue.  Mr. Caputo further denies that the quoted language in paragraph 18 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.

19.     Mr. Caputo admits the truth of the allegations set forth in the body of paragraph 19 of the Complaint to the extent that the Renewal Excess Policy, on the face of the Declarations, states a limit of liability of $10,000,000 in excess of $10,000,000 for the relevant Policy Period.  Mr. Caputo further admits the truth of the allegations set forth in the second sentence of paragraph 19 of the Complaint.  Mr. Caputo denies the allegations set forth in the footnote to paragraph 19 and instead avers that the claims for insurance coverage at issue in this action implicate the 2006-2007 Primary and Excess Policies, on the grounds that the subject litigation arose out of claims that were first made during the 2006-2007 Policy Period.

**B.      The Underlying Litigation**

20.     Mr. Caputo admits the truth of the allegations in the first sentence of paragraph 20 of the Complaint to the extent that litigation was commenced against SafeNet and the Insureds in connection with SafeNet's alleged stock options backdating practices.  The Complaint and subsequent Amended Complaints also included claims unrelated to allegations of stock option backdating that were dismissed by Court order and by agreement of the parties.  Mr. Caputo further admits with respect to the second and third sentences of paragraph 20 that a class action suit entitled *Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.*, 06 Civ. 5797 (PAC) (S.D.N.Y., filed Aug. 1, 2006) was commenced in the Southern District

of New York in connection with alleged stock options backdating (the "Securities Class Action

Litigation"), that the Securities Class Action Litigation was pending as of the date the Complaint

was filed, September 11, 2009, and that the original named defendants in the Securities Class

Action Litigation included SafeNet, Inc., Anthony A. Caputo, Kenneth A. Mueller, Carole D.

Argo, Thomas A. Brooks, Ira A. Hunt, Jr., Bruce R. Thaw, Arthur L. Money, Shelley A.

Harrison, Andrew E. Clark, and Walter W. Straub.  Mr. Caputo avers that the first amended

complaint in the Securities Class Action Litigation included these same defendants, with the

exclusion of Straub.  With respect to the fourth sentence of Paragraph 20, Mr. Caputo admits that

Mueller, Brooks, Hunt, Thaw, Money, Harrison, and Clark were later dismissed from the action,

but avers that the dismissal took place on August 5, 2009, not August 7, 2009.  Mr. Caputo

denies that portion of the second sentence of Paragraph 20 which alleges that the Securities Class

Action Litigation is currently pending and further avers that a settlement of the Securities Class

Action Litigation was finally approved by the court on December 20, 2010 and a final judgment

has been entered in the Securities Class Action Litigation pursuant to the settlement.

C.      **Policy Provisions**

      1.      **The Policies' Definition of "Application," Imputation of Knowledge, and Severability.**

      21.      Mr. Caputo admits that paragraph 21 of the Complaint accurately quotes a portion

of the Initial Primary Policy, but denies that that Initial Primary Policy and the Initial Excess

Policy apply to the Claims at issue.  Mr. Caputo further denies that the quoted language in

paragraph 21 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss

arising from the Claims at issue.

22.     Mr. Caputo admits that paragraph 22 of the Complaint accurately quotes a portion of Endorsement No. 4 to the Initial Primary Policy, but denies that that Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.  Mr. Caputo further denies that the quoted language in paragraph 22 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.  In the alternative, Mr. Caputo denies that coverage for the Claims at issue would be reduced, limited or precluded under Endorsement No. 4 even if the Initial Primary Policy and the Initial Excess Policy were to apply to the Claims at issue.

23.     Mr. Caputo admits that paragraph 23 of the Complaint paraphrases a portion of Endorsement No. 4 to the Initial Primary Policy, but Mr. Caputo denies that that Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.  Mr. Caputo further denies that the paraphrased language in paragraph 23 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.  In the alternative, Mr. Caputo denies that coverage for the Claims at issue would be reduced, limited or precluded under Endorsement No. 4 even if the Initial Primary Policy and the Initial Excess Policy were to apply to the Claims at issue.

24.     The allegations in paragraph 24 of the Complaint state a legal conclusion as to which no response is required.  If and to the extent a response is deemed required, Mr. Caputo denies the allegations in paragraph 24.

25.     Mr. Caputo admits that paragraph 25 of the Complaint paraphrases and accurately quotes portions of Endorsement No. 4 to the Initial Primary Policy, but denies that that Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.  Mr. Caputo further

denies that the paraphrased language in paragraph 25 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue. In the alternative, Mr. Caputo denies that coverage for the Claims at issue would be reduced, limited or precluded under Endorsement No. 4 even if the Initial Primary Policy and the Initial Excess Policy were to apply to the Claims at issue.

2.     **The Policies' Definition of "Non-Indemnifiable Loss."**

26.     Mr. Caputo admits that paragraph 26 of the Complaint accurately quotes the definition of the term "Non-Indemnifiable Loss" in the Initial Primary Policy, but denies that that Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue. Mr. Caputo further denies that the quoted language in paragraph 26 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue. In the alternative, Mr. Caputo denies that coverage for the Claims at issue would be reduced, limited or precluded under the definition quoted in paragraph 26 even if the Initial Primary Policy and the Initial Excess Policy were to apply to the Claims at issue.

3.     **Exclusions 4(a), 4(b), and 4(c).**

27.     Mr. Caputo admits that paragraph 27 of the Complaint paraphrases Exclusions 4(a), 4(b) and 4(c) of the Initial Primary Policy, and respectfully refers the Court to that document for a complete and accurate statement of its contents. Otherwise, paragraph 27 states a legal conclusion as to which no response is required. If and to the extent a response is required, Mr. Caputo denies the allegations. Mr. Caputo further denies that the paraphrased language in paragraph 27 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.

28.     Mr. Caputo admits that the allegations in the first sentence of paragraph 28 of the Complaint accurately quote a portion of Section 4 of the Initial Primary Policy as provided in the body of the policy form, but Mr. Caputo denies that the quoted language applies to Exclusions 4(a) and 4(c), pursuant to the terms of Endorsement No. 3 to the Initial Primary Policy.  The second sentence of paragraph 28 states a legal conclusion as to which no response is required.  If and to the extent a response is deemed required, Mr. Caputo denies the allegations in the second sentence of paragraph 28.  Mr. Caputo further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue and that the quoted language in paragraph 28 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.

### 4.     The Policies' Alternative Dispute Resolution Provision

29.     Mr. Caputo admits that the allegations in paragraph 29 of the Complaint paraphrase portions of Section 17 of the Initial Primary Policy, but denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

## D.     SafeNet's Financial Restatements and Carole Argo's Guilty Plea

30.     The allegations in the first sentence of paragraph 30 of the Complaint state a legal conclusion as to which no response is required.  If and to the extent a response is deemed required, Mr. Caputo denies the truth of the allegations contained in the first sentence of paragraph 30.  With respect to the second, third, and fourth sentences of paragraph 30, Mr. Caputo admits that SafeNet filed a Form 8-K and a Form 12b-25 with the SEC on or about the dates indicated, and respectfully refers the Court to those documents for a complete and accurate summary of their contents.  However, Mr. Caputo lacks knowledge or information sufficient to

form a belief as to the truth of the allegations concerning the findings or conclusions of the special committee or Board referenced in the third or fourth sentences of paragraph 30.

31.     Mr. Caputo admits the truth of the allegations in the first sentence of paragraph 31 of the Complaint.  With respect to the second sentence of paragraph 31, Mr. Caputo refers to Ms. Argo's plea allocution for its full and complete contents and denies anything inconsistent therewith.  Mr. Caputo denies the remaining allegations in paragraph 31 of the Complaint.

32.     Mr. Caputo states that he is without sufficient information to form a belief as to the allegations of Paragraph 32, and therefore denies the same.

33.     Mr. Caputo admits that counsel for Federal circulated to counsel for Defendants an offer to enter into a Tolling Agreement and that no such Tolling Agreement was reached. Upon information and belief, Mr. Caputo denies that all defendants failed to respond to Federal's offer.  Mr. Caputo otherwise denies the allegations in paragraph 33.

34.     Mr. Caputo admits the truth of the allegations set forth in paragraph 34 of the Complaint only to the extent that Federal submitted a Request for Mediation under Paragraph 17, "Alternative Dispute Resolution Process" of the Initial Primary Policy, but not under the 2006-2007 Primary Policy.

35.     Mr. Caputo admits the truth of the allegations set forth in paragraph 35 of the Complaint.

36.     Mr. Caputo admits the truth of the allegations set forth in paragraph 36 of the Complaint.

## V.    COUNT I – DECLARATORY JUDGMENT

37.    In response to paragraph 37 of the Complaint, Mr. Caputo repeats and incorporates herein by reference, as though set forth in full, his responses to paragraphs 1 through 36 of the Complaint.

38.    The allegations in paragraph 38 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is required, Mr. Caputo denies the allegations in paragraph 38.  Mr. Caputo further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

39.    The allegations in the first sentence of paragraph 39 of the Complaint state a legal conclusion as to which no response is required.  If and to the extent a response is deemed required, Mr. Caputo denies the allegations in the first sentence of paragraph 39.  In response to the second sentence of paragraph 39, Mr. Caputo admits only that SafeNet filed with the SEC the forms previously referenced in paragraph 30 on or about the dates indicated, but denies the remaining allegations in paragraph 39 to the extent they are inconsistent with the actual statements within the forms SafeNet filed with the SEC.  With respect to the third sentence of paragraph 39, Mr. Caputo refers to Ms. Argo's plea allocution for its full and complete contents and denies anything inconsistent therewith.  Mr. Caputo denies the remaining allegations in the third sentence of paragraph 39.

40.    The allegations in paragraph 40 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is deemed required, Mr. Caputo denies the allegations in paragraph 40.  Mr. Caputo further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

41.     The allegations in paragraph 41 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is deemed required, Mr. Caputo denies the allegations in paragraph 41.  Mr. Caputo further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

42.     The allegations in paragraph 42 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is deemed required, Mr. Caputo denies the allegations in paragraph 42.  Mr. Caputo further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

43.     The allegations in paragraph 43 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is deemed required, Mr. Caputo denies the allegations in paragraph 43.  Mr. Caputo further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

44.     The allegations in paragraph 44 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is deemed required, Mr. Caputo denies the allegations in paragraph 44.  Mr. Caputo further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

45.     The allegations in paragraph 45 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is deemed required, Mr. Caputo denies the allegations in paragraph 45.  Mr. Caputo further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

46.     With respect to the allegations in paragraph 46 of the Complaint, Mr. Caputo admits only that claims have been presented to Federal for coverage, but Mr. Caputo denies the truth of the remaining allegations set forth in paragraph 46.

47.     Paragraph 47 of the Complaint states legal conclusions as to which no response is required.

## V.     COUNT 2 - RESCISSION

48.     In response to paragraph 48 of the Complaint, Mr. Caputo repeats and incorporates herein by reference, as though set forth in full, his responses to paragraphs 1 through 47 of the Complaint.

49.     Mr. Caputo states that Paragraph 49 refers to SafeNet's SEC filings.  Mr. Caputo refers to those filings for their full and complete contents and denies anything inconsistent therewith.

50.     The allegations in paragraph 50 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is deemed required, Mr. Caputo denies the allegations in paragraph 50.

51.     Mr. Caputo is without knowledge or information sufficient to form a belief about the allegations in paragraph 51 of the Complaint, and therefore denies the same.

52.     Mr. Caputo denies the allegations of paragraph 52 of the Complaint.

53.     With respect to paragraph 53 of the Complaint, Mr. Caputo admits that he has received a copy of the Complaint, which purports to state a claim for rescission of the Initial

Excess Policy, and that Federal purports to offer to return some or all of the premium SafeNet

paid for the Initial Excess Policy in the event of rescission.  Mr. Caputo denies that the

Complaint is effective "Notice of Rescission" and Mr. Caputo denies that the purported offer by

Federal to return some or all of the premium to SafeNet is timely or adequate.  Mr. Caputo

further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at

issue, as Mr. Caputo avers that the 2006-2007 Primary and Excess Polices apply to the Claims at

issue.

54.     The allegations in paragraph 54 of the Complaint state legal conclusions as to

which no response is required.  If and to the extent a response is deemed required, Mr. Caputo

denies the allegations in paragraph 54.  Mr. Caputo further denies that the Initial Primary Policy

and the Initial Excess Policy apply to the Claims at issue, as Mr. Caputo avers that the 2006-

2007 Primary and Excess Polices apply to the Claims at issue.

## AFFIRMATIVE DEFENSES

55.     Federal is not entitled to the relief sought in the Complaint because the 2006-2007

Primary and Excess Policies apply to the Claims at issue, not the 2005-2006 Primary and Excess

Policies.  Federal has failed to state a claim upon which relief may be granted with respect to the

2006-2007 Excess Policy.

56.     Federal waived any rights it may have had to deny coverage under the 2006-2007

Excess Policy, or to seek to rescind the 2006-2007 Excess Policy.

57.     Federal is not entitled to the relief sought in the Complaint because Federal, by

reason of its conduct, is estopped from denying coverage under, or seeking to rescind, the 2006-

2007 Excess Policy.

## DEFENDANT CAPUTO'S FIRST COUNTER-CLAIM FOR DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201 WITH RESPECT TO COVERAGE UNDER THE 2006-2007 EXCESS POLICY

58.     Mr. Caputo repeats and re-alleges paragraphs 1 through 57 of this Answer, Affirmative Defenses and Counterclaims as though fully set forth herein.

59.     Upon information and belief, on or about February 28, 2006, SafeNet gave notice to Federal of certain circumstances that might reasonably have been expected to give rise to a Claim pursuant to Section 7(c) of the Initial Primary Policy.  These circumstances solely concerned accounting issues related to an understatement of lease restructuring charges and an understatement of costs of revenue in SafeNet's classified government business program as described in a Form 8-K that SafeNet filed with the SEC dated February 8, 2006 (these accounting issues are hereinafter referenced as "Lease and Costs Claims").  Upon information and belief, Federal explicitly limited its acceptance of this notice to the circumstances described in the February 8, 2006 Form 8-K.

60.     During the March 12, 2006 to March 12, 2007 policy period for the 2006-2007 Excess Policy, civil and criminal investigations were initiated, and several shareholder derivative actions and class action lawsuits, including but not limited to the Securities Class Action Litigation, were filed against SafeNet, Mr. Caputo, and the directors and other officers of SafeNet related to stock options granted by SafeNet to a number of directors and officers (together these investigations, actions and lawsuits are defined as the "Stock Option Claims"). Upon information and belief, SafeNet promptly notified National Union and Federal of the Stock Option claims.

61.     Although the Securities Class Action Litigation initially contained allegations related to both the Stock Option Claims and Lease and Costs Claims, the latter allegations were subsequently dismissed.  (Opinion and Order, *Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.*, 06 Civ. 5797 (PAC) (S.D.N.Y. Aug. 5, 2009)).

62.     The Stock Option Claims are covered under the Insuring Agreements and related terms of the 2006-2007 Primary and Excess Policies.

63.     Upon information and belief, SafeNet has incurred more than $45 million in Loss (as defined under the 2006-2007 Primary and Excess Policies) in connection with the defense and settlement of the Stock Option Claims.

64.     Mr. Caputo has incurred more than $9 million in Loss (as defined under the 2006-2007 Primary and Excess Policies) in connection with the defense and settlement of the Stock Option Claims.

65.     The 2006-2007 Primary and Excess Policies are the operative policies applicable to Mr. Caputo's pursuit of coverage for the Stock Option Claims, as the Stock Option Claims were first made during the 2006-2007 Policy Period.  Mr. Caputo is an insured and a beneficiary of the 2006-2007 Excess Policy.

66.     Upon information and belief, prior to filing its Complaint on September 11, 2009, Federal did not communicate to SafeNet or Mr. Caputo an intent to rescind and/or deny coverage under the 2006-2007 Excess Policy, despite being in possession of the facts upon which it bases its Complaint since as early as October 5, 2007, and therefore has waived and is estopped from asserting any right to deny coverage or to rescind the 2006-2007 Excess Policy.

67.     In the alternative, if Federal neither has waived nor is estopped from asserting the right to rescind the 2006-2007 Excess Policy, Mr. Caputo avers that no information contained within SafeNet's public filings was materially false for purposes of the Severability Provision in Endorsement No. 7 of the 2006-2007 Primary and Excess Policies.

68.     Upon information and belief, the covered loss of the parties insured under the 2006-2007 Primary and Excess Policies far exceeds the $10 million limit of liability of the underlying 2006-2007 Primary Policy and the limit of liability of the 2006-2007 Excess Policy. Federal's liability has been triggered under the 2006-2007 Excess Policy.

69.     Upon information and belief, Mr. Caputo  avers that SafeNet has paid all premiums for, has complied with all the terms and conditions of the 2006-2007 Excess Policy and/or is excused from such compliance because of Federal's actions.

70.     Mr. Caputo seeks declaratory relief, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, because an actual and justiciable controversy has arisen and now exists between Mr. Caputo and Federal as to their respective rights and obligations under the 2006-2007 Excess Policy.  A judicial declaration is necessary and appropriate at this time under the circumstances to determine the respective rights and obligations of the parties under the Policies.

### DEFENDANT CAPUTO'S SECOND COUNTER-CLAIM FOR DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201 WITH RESPECT TO COVERAGE UNDER THE 2005-2006 EXCESS POLICY

71.     Mr. Caputo pleads his Second Counter-Claim in the alternative.

72.     Mr. Caputo repeats and re-alleges paragraphs 1 through 71 of this Answer, Affirmative Defenses and Counterclaims as though fully set forth herein.

73.     Federal has accepted that the Stock Option Claims and Lease and Costs Claims are considered made at the time of the notice of circumstances SafeNet provided to Federal on or about February 28, 2006 — that is within the March 12, 2005 to March 12, 2006 Policy Period of the 2005-2006 Excess Policy.

74.     The Stock Option Claims and the Lease and Costs Claims are covered under the Insuring Agreements and related terms of the 2005-2006 Primary and Excess Policies.  Mr. Caputo is an insured and a beneficiary of the 2005-2006 Excess Policy.

75.     Upon information and belief, SafeNet has incurred more than $45 million in Loss (as defined under the 2005-2006 Primary and Excess Policies) in connection with the defense and settlement of the Stock Option Claims and the Lease and Costs Claims.

76.     In addition, Mr. Caputo has incurred more than $9 million in Loss (as defined under the 2005-2006 Primary and Excess Policies) in connection with the defense and settlement of the Stock Option Claims.

77.     Accordingly, the covered loss of the parties insured under the 2005-2006 Primary and Excess Policies far exceeds the $10 million limit of liability of the underlying 2005-2006 Primary Policy and the limit of liability of the 2005-2006 Excess Policy.  Federal's liability has been triggered under the 2005-2006 Excess Policy.

78.     Upon information and belief, Mr. Caputo avers that SafeNet has paid all premiums for and complied with all the terms and conditions of the 2005-2006 Excess Policy, and/or is excused from such compliance because of Federal's actions.

79.     Mr. Caputo seeks declaratory relief, pursuant to the Declaratory Judgment Act, 28

U.S.C. § 2201, because an actual and justiciable controversy has arisen and now exists between

Mr. Caputo and Federal as to their respective rights and obligations under the 2005-2006 Excess

Policy.  A judicial declaration is necessary and appropriate at this time under the circumstances

to determine the respective rights and obligations of the parties under the Policies.

## DEFENDANT CAPUTO'S THIRD COUNTER-CLAIM FOR BREACH OF CONTRACT

80.     Mr. Caputo repeats and re-alleges paragraphs 1 through 79 of this Answer,

Affirmative Defenses and Counterclaim as though fully set forth herein.

81.     Federal has a contractual duty under the either the 2006-2007 Excess Policy or the

2005-2006 Excess Policy to pay SafeNet, Mr. Caputo and other insureds for loss arising from the

Stock Option Claims in excess of the attachment point ($10 million under the Primary Policies

plus the applicable retention), up to the limit of liability under the respective Excess Policy.

82.     Mr. Caputo has incurred more than $9 million in Loss (as defined under both the

2006-2007 and 2005-2006 Primary and Excess Policies) in connection with the defense and

settlement of the Stock Option Claims.

83.     SafeNet's payment of $45 million to defend and settle the Stock Option Claims

constitutes Loss as defined under both the 2006-2007 Primary and Excess Policies and the 2005-

2006 Primary and Excess Policies.

84.     Accordingly, the covered loss of the parties insured under the 2005-2006 and

2006-2007 Primary and Excess Policies far exceeds the $10 million limit of liability of the

underlying 2005-2006 and 2006-2007 Primary Policies and the limit of liability of the 2005-2006

and 2006-2007 Excess Policies.  Federal's liability has been triggered under the 2005-2006 and 2006-2007 Excess Policies.

85.    Federal's denial of coverage and/or attempted rescission were wrongful, and Federal is obligated under the 2006-2007 Excess Policy or the 2005-2006 Excess Policy to pay SafeNet, Mr. Caputo and other insureds for loss in excess of the attachment point ($10 million under the Primary Policies plus the applicable retention), up to the limit of liability under respective Excess Policy.

86.    Mr. Caputo avers that, upon information and belief, SafeNet paid premiums and complied with all terms and conditions of the 2006-2007 Excess Policies and 2005-2006 Excess Policies.  Mr. Caputo is an insured and a beneficiary of those Excess Policies.

87.    As a direct and proximate result of Federal's contractual breach of either the 2006-2007 Excess Policy or the 2005-2006 Excess Policy, Mr. Caputo has suffered and may suffer further substantial monetary damages, and has been deprived of the benefit of the insurance coverage to which he is entitled.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Caputo respectfully requests that this Court grant judgment in its favor and against Federal as follows:

1.    With respect to Count I, for a Declaratory Judgment that:

(a)    The 2006-2007 Excess Policy is the operative policy applicable to SafeNet's pursuit of coverage for the settlement of the Stock Option Claims;

(b)    Federal has waived its right to rescind the 2006-2007 Excess Policy;

(c)      In the alternative, if Federal has not waived the right to rescind the 2006-2007 Excess Policy, the information contained within SafeNet's public filings during the relevant time period was not materially false for purposes of the Severability Provision in Endorsement No. 7 of the 2006-2007 Primary and Excess Policies;

(d)      Coverage is provided under the 2006-2007 Excess Policy for Loss Mr. Caputo incurred arising out of the Stock Option Claims; and

(e)      Coverage has attached under the 2006-2007 Excess Policy regardless of whether National Union has paid in full the amount of the Underlying Limit for the Policy Period.

2.      With respect to Count II, for a Declaratory Judgment that:

(a)      The information contained within SafeNet's public filings during the relevant time period was not materially false for purposes of the Severability Provision of the 2005-2006 Primary and Excess Policies;

(b)      Coverage is provided under the 2005-2006 Excess Policy for Loss Mr. Caputo has incurred or will incur arising out of the Stock Option Claims; and

(c)      Coverage has attached under the 2005-2006 Excess Policy regardless of whether National Union has paid in full the amount of the Underlying Limit for the Policy Period.

3.      With respect to Count III, Mr. Caputo requests that the Court enter judgment against Federal and award Mr. Caputo:

(a)      actual money damages according to proof at trial, plus interest according to law.

4.      For attorneys' fees and costs incurred in this matter.

5.      For interest on all sums where properly owed.

6.      For costs of suit incurred herein.

7.      For any and all such other relief as the Court deems just and proper.

Dated:  January 19, 2011                    ARNOLD & PORTER, LLP


                                            _____/s/_____

                                            John A. Freedman
                                            Joshua P. Wilson (Pro Hac Vice)
                                            ARNOLD & PORTER, LLP
                                            555 Twelfth St., N.W.
                                            Washington, DC 20004-1206
                                            Tel:  (202) 942-5000
                                            Fax:  (202) 942-5999
                                            john.freedman@aporter.com
                                            joshua.wilson@aporter.com

                                            *Attorneys for Defendant,*
                                            *Anthony A. Caputo*