# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> SAFENET, INC.; et al. ) <br><br> Defendants. ) | Civ. Action No. 09-CV-7863-NRB <br> ECF Case <br><br> **SAFENET, INC.'S** <br> **ANSWER AND COUNTER-CLAIMS** <br> **FOR DECLARATORY RELIEF** <br> **PURSUANT TO 28 U.S.C. § 2201 AND** <br> **BREACH OF CONTRACT** <br><br> **[JURY TRIAL DEMANDED]** |

## SAFENET'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 8(b), Defendant, SafeNet, Inc. ("SafeNet"), hereby answers the allegations of Plaintiff, Federal Insurance Company's ("Federal"), Complaint for Declaratory Relief Pursuant to 28 U.S.C. § 2201 (the "Complaint") and respectfully alleges as follows:

## I.      THE PARTIES

1.      SafeNet admits the averment of paragraph 1 of the Complaint.

2.      SafeNet admits the averment of paragraph 2 of the Complaint.

3.      Safenet neither admits nor denies the averments of paragraph 3 of the Complaint, based on the dismissal of Defendant Andrew E. Clark from this action following the filing of the Complaint.

4.     SafeNet neither admits nor denies the averments of paragraph 4 of the Complaint, based on the dismissal of Defendant Walter W. Straub from this action following the filing of the Complaint.

5.     SafeNet neither admits nor denies the averments of paragraph 5 of the Complaint, based on the dismissal of Defendant Thomas A. Brooks from this action following the filing of the Complaint.

6.     SafeNet neither admits nor denies the averments of paragraph 6 of the Complaint, based on the dismissal of Defendant Ira A. Hunt, Jr. from this action following the filing of the Complaint.

7.     SafeNet neither admits nor denies the averments of paragraph 7 of the Complaint, based on the dismissal of Defendant Bruce R. Thaw from this action following the filing of the Complaint.

8.     SafeNet neither admits nor denies the averments of paragraph 8 of the Complaint, based on the dismissal of Defendant Arthur L. Money from this action following the filing of the Complaint.

9.     SafeNet admits the truth of the allegations set forth in paragraph 9 of the Complaint.

10.     SafeNet neither admits nor denies the averments of paragraph 10 of the Complaint, based on the dismissal of Defendant Kenneth Mueller from this action following the filing of the Complaint.

11.     SafeNet admits the truth of the allegations set forth in paragraph 11 of the Complaint.

12.     SafeNet neither admits nor denies the averments of paragraph 12 of the Complaint, based on the dismissal of Defendant Shelley A. Harrison from this action following the filing of the Complaint.

13.     SafeNet neither admits nor denies the averments of paragraph 13 of the Complaint, which set forth legal conclusions as to which no response is required.

## II.     JURISDICTION AND VENUE

14.     SafeNet admits the truth of the allegations set forth in paragraph 14 of the Complaint.

15.     SafeNet neither admits nor denies the averments of paragraph 15 of the Complaint, which set forth legal conclusions as to which no response is required.  If and to the extent a response is deemed required, SafeNet denies that the 2005-2006 and 2006-2007 Excess Policies[1] were delivered by Federal in New York, and upon information and belief, SafeNet avers that both the 2005-2006 and 2006-2007 Excess Policies were delivered to SafeNet's broker at the relevant time, Marsh USA, in Washington, DC.

16.     SafeNet admits the truth of the allegations set forth in the first sentence of paragraph 16 of the Complaint.  With respect to the second sentence of paragraph 16, SafeNet

---

[1] Federal's excess policy for the 2005-2006 policy period is referenced in the Complaint as the "Initial Excess Policy" and is so referenced herein, or alternatively is referenced herein as the "2005-2006 Excess Policy."  The Federal policy for the 2006-2007 policy period is referenced in the Complaint as the "Renewal Excess Policy" but is referenced herein as the "2006-2007 Excess Policy."

admits that the District Court's ruling on December 7, 2010 holds that an actual controversy of a justiciable nature exists between the parties.

## III.   FACTUAL BACKGROUND

### A.   The Insurance Policies

17.   SafeNet admits the truth of the allegations set forth in paragraph 17 of the Complaint.

18.   SafeNet admits that paragraph 18 of the Complaint accurately quotes a portion of the Insuring Agreement of the Initial Excess Policy, but SafeNet denies that that Initial Excess Policy applies to the Claims at issue.  SafeNet further denies that the quoted language in paragraph 18 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.

19.   SafeNet admits the truth of the allegations set forth in the first sentence of paragraph 19 of the Complaint, to the extent that the 2006-2007 Excess Policy, on the face of the Declarations, states a limit of liability of $10,000,000 in excess of $10,000,000 for the relevant Policy Period.  SafeNet further admits the truth of the allegations set forth in the second sentence of paragraph 19 of the Complaint.  SafeNet denies the allegations set forth in the footnote to paragraph 19 and instead avers that the claims for insurance coverage at issue in this action implicate the 2006-2007 Primary and Excess Policies, on the grounds that the subject litigation arose out of claims that were first made during the 2006-2007 Policy Period.

**B.   The Underlying Litigation**

20.     SafeNet admits the truth of the allegations in the first sentence of paragraph 20 of the Complaint to the extent that litigation was commenced against SafeNet and the Insureds in connection with SafeNet's alleged stock options backdating practices and SafeNet's acquisition by Vector Capital. SafeNet further admits with respect to the second and third sentences of paragraph 20 that a class action suit entitled *Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.*, 06 Civ. 5797 (PAC) (S.D.N.Y., filed Aug. 1, 2006) was commenced in the Southern District of New York in connection with alleged stock options backdating (the "Securities Class Action Litigation"), that the Securities Class Action Litigation was pending as of the date Federal's Complaint was filed, September 11, 2009, and that the defendants named in the original Complaint (filed on August 1, 2006) in the Securities Class Action Litigation included SafeNet, Inc., Anthony A. Caputo, Kenneth A. Mueller, Carole D. Argo, Thomas A. Brooks, Ira A. Hunt, Jr., Bruce R. Thaw, Arthur L. Money, Shelley A. Harrison, Andrew E. Clark, and Walter W. Straub. SafeNet avers that the amended Complaint (filed on August 8, 2008) in the Securities Class Action Litigation included these same defendants, with the exclusion of Straub. With respect to the fourth sentence of Paragraph 20, SafeNet admits that Mueller, Brooks, Hunt, Thaw, Money, Harrison, and Clark were later dismissed, but SafeNet avers that the dismissal took place on August 5, 2009, not August 7, 2009. SafeNet denies that portion of the second sentence of Paragraph 20 which alleges that the Securities Class Action Litigation is currently pending and further avers that a settlement of the Securities Class Action Litigation was finally approved by the court on December 20, 2010 and a final judgment has been entered in the Securities Class Action Litigation pursuant to the settlement.

C.      **Policy Provisions**

    1.      **The Policies' Definition of "Application," Imputation of Knowledge, and Severability**

21.      SafeNet admits that paragraph 21 of the Complaint accurately quotes a portion of the Initial Primary Policy, but SafeNet denies that that Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.  SafeNet further denies that the quoted language in paragraph 21 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.

22.      SafeNet admits that paragraph 22 of the Complaint accurately quotes a portion of Endorsement No. 4 to the Initial Primary Policy, but SafeNet denies that that Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.  SafeNet further denies that the quoted language in paragraph 22 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.  In the alternative, SafeNet denies that coverage for the Claims at issue would be reduced, limited or precluded under Endorsement No. 4 even if the Initial Primary Policy and the Initial Excess Policy were to apply to the Claims at issue.

23.      SafeNet admits that paragraph 23 of the Complaint paraphrases a portion of Endorsement No. 4 to the Initial Primary Policy, but SafeNet denies that that Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.  SafeNet further denies that the paraphrased language in paragraph 23 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.  In the alternative, SafeNet denies that coverage for the Claims at issue would be reduced, limited or precluded under Endorsement No. 4 even if the Initial Primary Policy and the Initial Excess Policy were to apply to the Claims at issue.

24.     The allegations in paragraph 24 of the Complaint state a legal conclusion as to which no response is required.  If and to the extent a response is deemed required, SafeNet denies the allegations in paragraph 24.

25.     SafeNet admits that paragraph 25 of the Complaint paraphrases and accurately quotes portions of Endorsement No. 4 to the Initial Primary Policy, but SafeNet denies that that Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.  SafeNet further denies that the quoted and paraphrased language in paragraph 25 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.  In the alternative, SafeNet denies that coverage for the Claims at issue would be reduced, limited or precluded under Endorsement No. 4 even if the Initial Primary Policy and the Initial Excess Policy were to apply to the Claims at issue.

### 2.     The Policies' Definition of "Non-Indemnifiable Loss"

26.     SafeNet admits that paragraph 26 of the Complaint accurately quotes the definition of the term "Non-Indemnifiable Loss" in the Initial Primary Policy, but SafeNet denies that that Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.  SafeNet further denies that the quoted language in paragraph 26 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.  In the alternative, SafeNet denies that coverage for the Claims at issue would be reduced, limited or precluded under the definition quoted in paragraph 26 even if the Initial Primary Policy and the Initial Excess Policy were to apply to the Claims at issue.

### 3.   Exclusions 4(a), 4(b), and 4(c)

27.   SafeNet admits that paragraph 27 of the Complaint paraphrases Exclusions 4(a), 4(b) and 4(c) of the Initial Primary Policy, but SafeNet denies that that Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.  SafeNet further denies that the paraphrased language in paragraph 27 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.  In the alternative, SafeNet denies that coverage for the Claims at issue would be reduced, limited or precluded under Exclusions 4(a), 4(b) and 4(c) even if the Initial Primary Policy and the Initial Excess Policy were to apply to the Claims at issue.

28.   SafeNet admits that the allegations in the first sentence of paragraph 28 of the Complaint accurately quote a portion of Section 4 of the Initial Primary Policy as provided in the body of the policy form, but SafeNet denies that the quoted language applies to Exclusions 4(a) and 4(c), pursuant to the terms of Endorsement No. 3 to the Initial Primary Policy.  The second sentence of paragraph 28 states a legal conclusion as to which no response is required.  If and to the extent a response is deemed required, SafeNet denies the allegations in the second sentence of paragraph 28.  SafeNet further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue and that the quoted language in paragraph 28 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.

### 4.   The Policies' Alternative Dispute Resolution Provision

29.   SafeNet admits that the allegations in paragraph 29 of the Complaint paraphrase portions of Section 17 of the Initial Primary Policy, but SafeNet denies that that Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

**D.    SafeNet's Financial Restatements and Carole Argo's Guilty Plea**

30.    The first sentence of paragraph 30 of the Complaint states a legal conclusion to which no response is required.  If and to the extent a response is deemed required, SafeNet denies the truth of the allegations contained in the first sentence of paragraph 30.  SafeNet admits the truth of the allegations contained in the second sentence of paragraph 30.  SafeNet further admits that it filed with the SEC the forms referenced in the third and fourth sentences of paragraph 30 on or about the dates indicated, but SafeNet denies all other factual allegations in paragraph 30 to the extent they are inconsistent with the actual statements within the forms SafeNet filed with the SEC.

31.    SafeNet admits the truth of the allegations in the first sentence of paragraph 31 of the Complaint.  With respect to the second sentence of paragraph 31, SafeNet admits that Argo pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001, and respectfully refers the Court to Argo's plea allocution, which contains a complete and accurate statement of its contents.  SafeNet denies the remaining allegations in paragraph 31.

32.    With respect to paragraph 32 of the Complaint, SafeNet admits that Federal sent SafeNet a letter dated May 14, 2008, in which Federal asserted a general reservation of rights and described certain coverage defenses raised by National Union with respect to the Initial Primary Policy, and also that Federal sent a letter to SafeNet dated June 27, 2008, in which Federal declined coverage and asserted that it intended to pursue rescission with respect to the Initial Excess Policy. SafeNet denies the other allegations in paragraph 32, including, without limitation, that Federal

communicated to SafeNet any alleged grounds or intent to rescind and/or deny coverage under the 2006-2007 Excess Policy.

33.    SafeNet admits the truth of the allegations set forth in the first sentence of paragraph 33 of the Complaint.  With respect to the second sentence of paragraph 33, SafeNet admits that no tolling agreement was entered into.  Upon information and belief, SafeNet denies the remaining allegations in the second sentence of paragraph 33 of the Complaint.

34.    SafeNet admits the truth of the allegations set forth in paragraph 34 of the Complaint, only to the extent that Federal submitted a Request for Mediation under Paragraph 17, "Alternative Dispute Resolution Process" of the Initial Primary Policy, but not under the 2006-2007 Primary Policy.

35.    SafeNet admits the truth of the allegations set forth in paragraph 35 of the Complaint.

36.    SafeNet admits the truth of the allegations set forth in paragraph 36 of the Complaint.

## IV.    COUNT I – DECLARATORY JUDGMENT

37.    In response to paragraph 37 of the Complaint, SafeNet repeats and incorporates herein by reference, as though set forth in full, its responses to paragraphs 1 through 36 of the Complaint.

38.    The allegations in paragraph 38 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is deemed required, SafeNet denies

the allegations in paragraph 38. SafeNet further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

39.    The allegations in the first sentence of paragraph 39 of the Complaint state a legal conclusion as to which no response is required. If and to the extent a response is deemed required, SafeNet denies the allegations in the first sentence of paragraph 39. In response to the second sentence of paragraph 39, SafeNet admits only that it filed with the SEC the forms previously referenced in paragraph 30 on or about the dates indicated, but SafeNet denies the remaining allegations in paragraph 39 to the extent they are inconsistent with the actual statements within the forms SafeNet filed with the SEC. With respect to the third sentence of paragraph 39, SafeNet admits that Argo pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001, and respectfully refers the Court to Argo's plea allocution, which contains a complete and accurate statement of its contents.

40.    The allegations in paragraph 40 of the Complaint state legal conclusions as to which no response is required. If and to the extent a response is deemed required, SafeNet denies the allegations in paragraph 40. SafeNet further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

41.    The allegations in paragraph 41 of the Complaint state legal conclusions as to which no response is required. If and to the extent a response is deemed required, SafeNet denies the allegations in paragraph 41. SafeNet further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

42.    The allegations in paragraph 42 of the Complaint state legal conclusions as to which no response is required. If and to the extent a response is deemed required, SafeNet denies

the allegations in paragraph 42. SafeNet further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

43.     The allegations in paragraph 43 of the Complaint state legal conclusions as to which no response is required. If and to the extent a response is deemed required, SafeNet denies the allegations in paragraph 43. SafeNet further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

44.     The allegations in paragraph 44 of the Complaint state legal conclusions as to which no response is required. If and to the extent a response is deemed required, SafeNet denies the allegations in paragraph 44. SafeNet further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

45.     The allegations in paragraph 45 of the Complaint state legal conclusions as to which no response is required. If and to the extent a response is deemed required, SafeNet denies the allegations in paragraph 45. SafeNet further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

46.     With respect to the allegations in paragraph 46 of the Complaint, SafeNet admits only that claims have been presented to Federal for coverage, but SafeNet denies the truth of the remaining allegations set forth in paragraph 46.

47.     The allegations in paragraph 47 of the Complaint state legal conclusions as to which no response is required.

## V.    COUNT 2 - RESCISSION

48.    In response to paragraph 48 of the Complaint, SafeNet repeats and incorporates herein by reference, as though set forth in full, its responses to paragraphs 1 through 47 of the Complaint.

49.    In response to paragraph 49 of the Complaint, SafeNet admits that it has filed forms with the SEC addressing the issues described in paragraph 49, but SafeNet denies all other factual allegations to the extent they are inconsistent with the actual statements within the forms SafeNet filed with the SEC and to the extent they state legal conclusions.  The allegation in paragraph 49 with respect to the definition of "SafeNet's Application for the Initial Excess Policy" states a legal conclusion to which no response is required.  If and to the extent a response is deemed required, SafeNet denies the allegations with respect to with respect to the definition of "SafeNet's Application for the Initial Excess Policy."

50.    The allegations in paragraph 50 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is deemed required, SafeNet denies the allegations in paragraph 50.

51.    SafeNet is without knowledge or information sufficient to form a belief about the allegations in paragraph 51 of the Complaint.

52.    SafeNet denies the allegations of paragraph 52 of the Complaint.

53.    With respect to paragraph 53 of the Complaint, SafeNet admits that it has received a copy of the Complaint, which purports to state a claim for rescission of the Initial Excess Policy, and that Federal purports to offer to return some or all of the premium SafeNet paid for the Initial

Excess Policy in the event of rescission.  SafeNet denies that the Complaint is effective "Notice of

Rescission" and SafeNet denies that the purported offer by Federal to return some or all of the

premium to SafeNet is timely or adequate.  SafeNet further denies that the Initial Primary Policy

and the Initial Excess Policy apply to the Claims at issue, as SafeNet avers that the 2006-2007

Primary and Excess Polices apply to the Claims at issue.

54.     The allegations in paragraph 54 of the Complaint state legal conclusions as to

which no response is required.  If and to the extent a response is deemed required, SafeNet denies

the allegations in paragraph 54.  SafeNet further denies that the Initial Primary Policy and the

Initial Excess Policy apply to the Claims at issue, as SafeNet avers that the 2006-2007 Primary and

Excess Polices apply to the Claims at issue.

## DEFENDANT SAFENET'S AFFIRMATIVE DEFENSES

55.     Federal is not entitled to the relief sought in the Complaint because the 2006-2007

Primary and Excess Policies apply to the Claims at issue, not the 2005-2006 Primary and Excess

Policies.  Federal has failed to state a claim upon which relief may be granted with respect to the

2006-2007 Excess Policy.

56.     Federal waived any rights it may have had to deny coverage under the 2006-2007

Excess Policy, or to seek to rescind the 2006-2007 Excess Policy.

57.     Federal is not entitled to the relief sought in the Complaint because Federal, by

reason of its conduct, is estopped from denying coverage under, or seeking to rescind, the

2006-2007 Excess Policy.

**DEFENDANT SAFENET'S FIRST COUNTER-CLAIM FOR DECLARATORY RELIEF
PURSUANT TO 28 U.S.C. § 2201 WITH RESPECT TO COVERAGE UNDER THE
2006-2007 EXCESS POLICY**

58.     SafeNet repeats and re-alleges paragraphs 1 through 57 of this Answer, Affirmative

Defenses and Counterclaims as though fully set forth herein.

59.     On or about February 28, 2006, SafeNet gave notice to Federal of certain

circumstances that might reasonably have been expected to give rise to a Claim pursuant to Section

7(c) of the Initial Primary Policy.  These circumstances solely concerned accounting issues related

to an understatement of lease restructuring charges and an understatement of costs of revenue in

SafeNet's classified government business program as described in a Form 8-K that SafeNet filed

with the SEC dated February 8, 2006 (these accounting issues are hereinafter referenced as "Lease

and Costs Claims").  Federal explicitly limited its acceptance of this notice to the circumstances

described in the February 8, 2006 Form 8-K.

60.     During the March 12, 2006 to March 12, 2007 policy period for the 2006-2007

Excess Policy, civil and criminal investigations were initiated, and several shareholder derivative

and class action lawsuits, including but not limited to the Securities Class Action Litigation, were

filed against SafeNet and directors and officers of SafeNet related to stock options granted by

SafeNet to a number of directors and officers (together these investigations, actions and lawsuits

are hereinafter referenced as the "Stock Option Claims").  SafeNet promptly notified National

Union and Federal of the Stock Option Claims.

61.     Although the Securities Class Action Litigation initially contained allegations

related to both the Stock Option Claims and Lease and Cost Claims, the latter allegations were

subsequently dismissed.  (Opinion and Order, *Police and Fire Retirement System of the City of*

*Detroit, et al. v. SafeNet, Inc., et al.*, 06 Civ. 5797 (PAC) (S.D.N.Y. Aug. 5, 2009); Joint

Stipulation and Order, *Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet,*

*Inc., et al.*, 06 Civ. 5797 (PAC) (S.D.N.Y. Mar. 9, 2010)).

62.     The Stock Option Claims are covered under the Insuring Agreements and related

terms of the 2006-2007 Primary and Excess Policies.  True complete and correct copies of those

Policies are attached hereto as Exhibits A and B respectively.

63.     SafeNet has paid more than $45 million in Loss (as defined under the 2006-2007

Primary and Excess Policies) in connection with the defense and settlement of the Stock Option

Claims.

64.     The 2006-2007 Primary and Excess Policies are the operative policies applicable to

SafeNet's pursuit of coverage for the Stock Option Claims, as the Stock Option Claims were first

made during the 2006-2007 Policy Period.

65.     Prior to filing its Complaint on September 11, 2009, Federal did not communicate

to SafeNet an intent to rescind and/or deny coverage under the 2006-2007 Excess Policy, despite

being in possession of the facts upon which it bases its Complaint since as early as October 5, 2007,

and therefore has waived and is estopped from asserting any right to deny coverage or to rescind

the 2006-2007 Excess Policy.

66.     In the alternative, if Federal neither has waived nor is estopped from asserting the

right to rescind the 2006-2007 Excess Policy, SafeNet avers that no information contained within

SafeNet's public filings was materially false for purposes of the Severability Provision in

Endorsement No. 7 of the 2006-2007 Primary and Excess Policies.

67.     SafeNet's covered loss far exceeds the $10 million limit of liability of the underlying 2006-2007 Primary Policy and the limit of liability of the 2006-2007 Excess Policy. Federal's liability has been triggered under the 2006-2007 Excess Policy.

68.     SafeNet avers that it has paid all premiums for the 2006-2007 Excess Policy and either has complied with all the terms and conditions of that Policy or is excused from such compliance because of Federal's actions.

69.     SafeNet seeks declaratory relief, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, because an actual and justiciable controversy has arisen and now exists between SafeNet and Federal as to the respective rights and obligations of SafeNet and Federal under the 2006-2007 Excess Policy. A judicial declaration is necessary and appropriate at this time under the circumstances to determine the respective rights and obligations of the parties under the Policies.

## DEFENDANT SAFENET'S SECOND COUNTER-CLAIM FOR DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201 WITH RESPECT TO COVERAGE UNDER THE 2005-2006 EXCESS POLICY

70.     SafeNet pleads its Second Counter-Claim in the alternative.

71.     SafeNet repeats and re-alleges paragraphs 1 through 57, 59 and 60 of this Answer, Affirmative Defenses and Counterclaims as though fully set forth herein.

72.     Federal has accepted that the Stock Option Claims and the Lease and Costs Claims are considered made at the time of the notice of circumstances SafeNet provided to Federal on or about February 28, 2006 -- that is within the March 12, 2005 to March 12, 2006 Policy Period of the 2005-2006 Excess Policy.

73.     The Stock Option Claims and the Lease and Costs Claims are covered under the Insuring Agreements and related terms of the 2005-2006 Primary and Excess Policies.

74.     SafeNet has paid more than $45 million in Loss (as defined under the 2005-2006 Primary and Excess Policies) in connection with the defense and settlement of the Stock Option Claims and the Lease and Costs Claims.  SafeNet's covered loss far exceeds the $10 million limit of liability of the underlying 2005-2006 Primary Policy and the limit of liability of the 2005-2006 Excess Policy.  Federal's liability has been triggered under the 2005-2006 Excess Policy.

75.     SafeNet avers that it has paid all premiums for the 2005-2006 Excess Policy and either has complied with all the terms and conditions of that Policy or is excused from such compliance because of Federal's actions.

76.     SafeNet seeks declaratory relief, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, because an actual and justiciable controversy has arisen and now exists between SafeNet and Federal as to the respective rights and obligations of SafeNet and Federal under the 2005-2006 Excess Policy.  A judicial declaration is necessary and appropriate at this time under the circumstances to determine the respective rights and obligations of the parties under the Policies.

## DEFENDANT SAFENET'S THIRD COUNTER-CLAIM FOR BREACH OF CONTRACT

77.     SafeNet repeats and re-alleges paragraphs 1 through 76 of this Answer, Affirmative Defenses and Counterclaim as though fully set forth herein.

78.     Federal has a contractual duty under the either the 2006-2007 Excess Policy or the 2005-2006 Excess Policy to pay SafeNet for loss arising from the Stock Option Claims in excess

of the attachment point ($10 million under the Primary Policies plus the applicable retention), up to the limit of liability under the respective Excess Policy.

79.    SafeNet's payment of more than $45 million to defend and settle the Stock Option Claims constitutes Loss as defined under both the 2006-2007 Primary and Excess Policies and the 2005-2006 Primary and Excess Policies.

80.    SafeNet's covered Loss far exceeds the $10 million limit of liability of the underlying Primary Policies and attachment point for the Excess Policies.

81.    Federal's denial of coverage and/or attempted rescission were wrongful, and Federal is obligated under the 2006-2007 Excess Policy or the 2005-2006 Excess Policy to pay SafeNet the full limits of coverage for SafeNet's Loss.

82.    SafeNet avers that it has paid all premiums for the 2006-2007 Excess Policy and the 2005-2006 Excess Policy and either has complied with all the terms and conditions of the those Policies or is excused from such compliance because of Federal's actions.

83.    As a direct and proximate result of Federal's contractual breach of either the 2006-2007 Excess Policy or the 2005-2006 Excess Policy, SafeNet has suffered, and continues to suffer, substantial monetary damages, including the costs and attorneys fees in connection with this suit.  SafeNet has further been deprived of the benefit of the insurance coverage for which it paid substantial premiums.

## PRAYER FOR RELIEF

WHEREFORE, SafeNet respectfully requests that this Court grant judgment in its favor

and against Federal as follows:

1.      With respect to Count I, for a Declaratory Judgment that:

    (a)    The 2006-2007 Excess Policy is the operative policy applicable to SafeNet's pursuit of coverage for the settlement of the Stock Option Claims;

    (b)    Federal has waived its right to rescind the 2006-2007 Excess Policy;

    (c)    In the alternative, if Federal has not waived the right to rescind the 2006-2007 Excess Policy, the information contained within SafeNet's public filings during the relevant time period was not materially false for purposes of the Severability Provision in Endorsement No. 7 of the 2006-2007 Primary and Excess Policies;

    (d)    Coverage is provided under the 2006-2007 Excess Policy for Loss SafeNet incurred arising out of the Stock Option Claims; and

    (e)    Coverage has attached under the 2006-2007 Excess Policy regardless of whether National Union has paid in full the amount of the Underlying Limit for the Policy Period.

2.      With respect to Count II, for a Declaratory Judgment that:

    (a)    The information contained within SafeNet's public filings during the relevant time period was not materially false for purposes of the Severability Provision of the 2005-2006 Primary and Excess Policies;

    (b)    Coverage is provided under the 2005-2006 Excess Policy for Loss SafeNet incurred arising out of the Stock Option Claims and the Lease and Costs Claims; and

    (c)    Coverage has attached under the 2005-2006 Excess Policy regardless of whether National Union has paid in full the amount of the Underlying Limit for the Policy Period.

3.      With respect to Count III, SafeNet requests that the Court enter judgment against Federal and award SafeNet:

    (a)    actual money damages according to proof at trial, plus interest according to law.

4.      For attorneys' fees and costs incurred in this matter.

NRB    Document 41    Filed 01/19/11    Page 21 of 21

5. For interest on all sums where properly owed.

6. For costs of suit incurred herein.

7. For any and all such other relief as the Court deems just and proper.

Dated: January 19, 2011

REED SMITH, LLP

Ann V. Kramer [AK6448]
REED SMITH LLP
599 Lexington Avenue
22nd Floor
New York, New York 10022
Tel: (212) 205-6057
Fax: (212) 521-5450
akramer@reedsmith.com

*Attorneys for Defendant,*
*SafeNet, Inc.*