**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, | ) | |
| | ) | Civ. Action No. 09-CV-7863-NRB |
| Plaintiff, | ) | |
| | ) | **CAROLE D. ARGO'S** |
| v. | ) | **ANSWER AND COUNTER-CLAIMS** |
| | ) | **FOR DECLARATORY RELIEF** |
| SAFENET, INC.; et al. | ) | **PURSUANT TO 28 U.S.C. § 2201 AND** |
| | ) | **BREACH OF CONTRACT** |
| Defendants. | ) | |
| | ) | **[JURY TRIAL DEMANDED]** |
| _____ | ) | |

<u>**CAROLE D. ARGO'S ANSWER, AFFIRMATIVE DEFENSES AND
COUNTERCLAIMS**</u>

Pursuant to Federal Rule of Civil Procedure 8(b), Defendant, Carole D. Argo, hereby

answers the allegations of Plaintiff, Federal Insurance Company's ("Federal"), Complaint for

Declaratory Relief Pursuant to 28 U.S.C. § 2201 (the "Complaint") and respectfully alleges as

follows:

**I.       THE PARTIES**

1.       Ms. Argo admits the averment of paragraph 1 of the Complaint.

2.       Ms. Argo admits the averment of paragraph 2 of the Complaint.

3.       Ms. Argo neither admits nor denies the averments of paragraph 3 of the

Complaint, based on the dismissal of Defendant Andrew E. Clark from this action following the

filing of the Complaint.

4.      Ms. Argo neither admits nor denies the averments of paragraph 4 of the Complaint, based on the dismissal of Defendant Walter W. Straub from this action following the filing of the Complaint.

5.      Ms. Argo neither admits nor denies the averments of paragraph 5 of the Complaint, based on the dismissal of Defendant Thomas A. Brooks from this action following the filing of the Complaint.

6.      Ms. Argo neither admits nor denies the averments of paragraph 6 of the Complaint, based on the dismissal of Defendant Ira A. Hunt, Jr. from this action following the filing of the Complaint.

7.      Ms. Argo neither admits nor denies the averments of paragraph 7 of the Complaint, based on the dismissal of Defendant Bruce R. Thaw from this action following the filing of the Complaint.

8.      Ms. Argo neither admits nor denies the averments of paragraph 8 of the Complaint, based on the dismissal of Defendant Arthur L. Money from this action following the filing of the Complaint.

9.      Ms. Argo admits the truth of the allegations set forth in paragraph 9 of the Complaint.

10.     Ms. Argo neither admits nor denies the averments of paragraph 10 of the Complaint, based on the dismissal of Defendant Kenneth Mueller from this action following the filing of the Complaint.

11.     Ms. Argo admits the truth of the allegations set forth in paragraph 11 of the Complaint.

12.     Ms. Argo neither admits nor denies the averments of paragraph 12 of the Complaint, based on the dismissal of Defendant Shelley A. Harrison from this action following the filing of the Complaint.

13.     Ms. Argo neither admits nor denies the averments of paragraph 13 of the Complaint, which set forth legal conclusions as to which no response is required.

## II.     JURISDICTION AND VENUE

14.     Ms. Argo admits the truth of the allegations set forth in paragraph 14 of the Complaint.

15.     Paragraph 15 states legal conclusions as to which no response is required.  If and to the extent a response is required, Ms. Argo is without knowledge or information sufficient to form a belief about the allegations set forth in paragraph 15 of the Complaint.

16.     Ms. Argo admits the first sentence of paragraph 16 of the Complaint.  With respect to the second sentence, Ms. Argo admits that the District Court's ruling of December 7, 2010 holds that an actual controversy of a justiciable nature exists between the parties.

## III.     FACTUAL BACKGROUND

## A.     The Insurance Policies

17.     Ms. Argo admits the truth of the allegations set forth in paragraph 17 of the Complaint.

18.    Ms. Argo admits that paragraph 18 of the Complaint accurately quotes a portion of the Insuring Agreement of the Initial Excess Policy, but denies that that Initial Excess Policy applies to the Claims at issue.  Ms. Argo further denies that the quoted language in paragraph 18 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.

19.    Ms. Argo admits the truth of the allegations set forth in the first sentence of paragraph 19 of the Complaint, to the extent that the Renewal Excess Policy, on the face of the Declarations, states a limit of liability of $10,000,000 in excess of $10,000,000 for the relevant Policy Period.  Ms. Argo further admits the truth of the allegations set forth in the second sentence of paragraph 19 of the Complaint.  Ms. Argo denies the allegations set forth in the footnote to paragraph 19 and instead avers that the claims for insurance coverage at issue in this action implicate the 2006-2007 Primary and Excess Policies, on the grounds that the subject litigation arose out of claims that were first made during the 2006-2007 Policy Period.

**B.    The Underlying Litigation**

20.    Ms. Argo admits the truth of the allegations in the first sentence of paragraph 20 of the Complaint to the extent that litigation was commenced against SafeNet and the Insureds in connection with SafeNet's alleged stock options backdating practices.  The Complaint and subsequent Amended Complaints also included claims unrelated to allegations of stock option backdating that were dismissed by Court order and by agreement of the parties.  Ms. Argo further admits with respect to the second and third sentences of paragraph 20 that a class action suit entitled *Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.*, 06 Civ. 5797 (PAC) (S.D.N.Y., filed Aug. 1, 2006) was commenced in the Southern District

- 4 -

of New York in connection with alleged stock options backdating (the "Securities Class Action Litigation"), that the Securities Class Action Litigation was pending as of the date Federal's Complaint was filed, September 11, 2009, and that the defendants named in the original Complaint (filed on August 1, 2006) in the Securities Class Action Litigation included SafeNet, Inc., Anthony A. Caputo, Kenneth A. Mueller, Carole D. Argo, Thomas A. Brooks, Ira A. Hunt, Jr., Bruce R. Thaw, Arthur L. Money, Shelley A. Harrison, Andrew E. Clark, and Walter W. Straub.  Ms. Argo avers that the amended Complaint (filed on August 8, 2008) in the Securities Class Action Litigation included these same defendants, with the exclusion of Straub.  With respect to the fourth sentence of Paragraph 20, Ms. Argo admits that Mueller, Brooks, Hunt, Thaw, Money, Harrison, and Clark were later dismissed, but SafeNet avers that the dismissal took place on August 5, 2009, not August 7, 2009.  Ms. Argo denies that portion of the second sentence of Paragraph 20 which alleges that the Securities Class Action Litigation is currently pending and further avers that a settlement of the Securities Class Action Litigation was finally approved by the court on December 20, 2010 and a final judgment has been entered in the Securities Class Action Litigation pursuant to the settlement.

**C.     Policy Provisions**

      **1.     The Policies' Definition of "Application," Imputation of Knowledge, and Severability.**

      21.     Ms. Argo admits that paragraph 21 of the Complaint accurately quotes a portion of the Initial Primary Policy, but denies that that Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.  Ms. Argo further denies that the quoted language in paragraph 21 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.

22.     Ms. Argo admits that paragraph 22 of the Complaint accurately quotes a portion of Endorsement No. 4 to the Initial Primary Policy, but denies that that Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.  Ms. Argo further denies that the quoted language in paragraph 22 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.  In the alternative, Ms. Argo denies that coverage for the Claims at issue would be reduced, limited or precluded under Endorsement No. 4 even if the Initial Primary Policy and the Initial Excess Policy were to apply to the Claims at issue.

23.     Ms. Argo admits that paragraph 23 of the Complaint paraphrases a portion of Endorsement No. 4 to the Initial Primary Policy, but denies that that Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.  Ms. Argo further denies that the paraphrased language in paragraph 23 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.  In the alternative, Ms. Argo denies that coverage for the Claims at issue would be reduced, limited or precluded under Endorsement No. 4 even if the Initial Primary Policy and the Initial Excess Policy were to apply to the Claims at issue.

24.     The allegations in paragraph 24 of the Complaint state a legal conclusion as to which no response is required.  If and to the extent a response is required, Ms. Argo denies the allegations in paragraph 24.

25.     Ms. Argo admits that paragraph 25 of the Complaint paraphrases and accurately quotes portions of Endorsement No. 4 to the Initial Primary Policy, but denies that that Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.  Ms. Argo further

denies that the paraphrased language in paragraph 25 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.  In the alternative, Ms. Argo denies that coverage for the Claims at issue would be reduced, limited or precluded under Endorsement No. 4 even if the Initial Primary Policy and the Initial Excess Policy were to apply to the Claims at issue.

### 2.      The Policies' Definition of "Non-Indemnifiable Loss."

26.      Ms. Argo admits that paragraph 26 of the Complaint accurately quotes the definition of the term "Non-Indemnifiable Loss" in the Initial Primary Policy, but denies that that Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.  Ms. Argo further denies that the quoted language in paragraph 26 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.  In the alternative, Ms. Argo denies that coverage for the Claims at issue would be reduced, limited or precluded under the definition quoted in paragraph 26 even if the Initial Primary Policy and the Initial Excess Policy were to apply to the Claims at issue.

### 3.      Exclusions 4(a), 4(b), and 4(c).

27.      Ms. Argo admits that paragraph 27 of the Complaint paraphrases Exclusions 4(a), 4(b) and 4(c) of the Initial Primary Policy, and respectfully refers the Court to that document for a complete and accurate statement of its contents.  Otherwise, paragraph 27 states a legal conclusion to which no response is required.  If and to the extent a response is required, Ms. Argo denies the allegations.  Ms. Argo further denies that the paraphrased language in paragraph 27 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.

28.     Ms. Argo admits that the allegations in the first sentence of paragraph 28 of the Complaint accurately quote a portion of Section 4 of the Initial Primary Policy as provided in the body of the policy form, but denies that the quoted language applies to Exclusions 4(a) and 4(c), pursuant to the terms of Endorsement No. 3 to the Initial Primary Policy.  The second sentence of paragraph 28 states a legal conclusion as to which no response is required.  If and to the extent a response is required, Ms. Argo denies the allegations in the second sentence of paragraph 28. Ms. Argo further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue and that the quoted language in paragraph 28 reduces, limits, or precludes coverage under the 2006-2007 Excess Policy for Loss arising from the Claims at issue.

### 4.     The Policies' Alternative Dispute Resolution Provision

29.     Ms. Argo admits that the allegations in paragraph 29 of the Complaint paraphrase portions of Section 17 of the Initial Primary Policy, but denies that that Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

### D.     SafeNet's Financial Restatements and Carole Argo's Guilty Plea

30.     The allegations in the first sentence of paragraph 30 of the Complaint state a legal conclusion as to which no response is required.  If and to the extent a response is required, Ms. Argo denies the truth of the allegations contained in the first sentence of paragraph 30.  With respect to the second, third, and fourth sentences of paragraph 30, Ms. Argo admits that SafeNet filed a Form 8-K and a Form 12b-25 with the SEC on or about the dates indicated, and respectfully refers the Court to those documents for a complete and accurate summary of their contents.  However, Ms. Argo lacks knowledge or information sufficient to form a belief as to

the truth of the allegations concerning the findings or conclusions of the special committee or Board referenced in the third or fourth sentences of paragraph 30.

31.     Ms. Argo admits the truth of the allegations in the first sentence of paragraph 31 of the Complaint.  With respect to the second sentence of paragraph 31, Ms. Argo admits that she pleaded guilty to a single count of securities fraud, and respectfully refers the Court to Ms. Argo's plea allocution, which contains a complete and accurate statement of its contents. Otherwise, Ms. Argo denies the allegations in the second sentence of paragraph 31.

32.     Ms. Argo admits that Federal sent a letter dated June 27, 2008 to SafeNet in which Federal declined coverage and asserted that it intended to pursue rescission with respect to the Initial Excess Policy.  Ms. Argo lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 regarding the May 14, 2008 letter.  Ms. Argo denies the other allegations in paragraph 32, including, without limitation, that Federal communicated to SafeNet any alleged grounds or intent to rescind and/or deny coverage under the 2006-2007 Excess Policy.

33.     Ms. Argo admits the truth of the allegations set forth in the first sentence of paragraph 33 of the Complaint.  Ms. Argo agreed to sign the tolling agreement and lacks knowledge or information sufficient to form a belief as to the reason a tolling agreement was not signed.

34.     Ms. Argo admits the truth of the allegations set forth in paragraph 34 of the Complaint, only to the extent that Federal submitted a Request for Mediation under Paragraph 17, "Alternative Dispute Resolution Process" of the Initial Primary Policy, but not under the 2006-2007 Primary Policy.

- 9 -

35.     Ms. Argo admits the truth of the allegations set forth in paragraph 35 of the Complaint.

36.     Ms. Argo admits the truth of the allegations set forth in paragraph 36 of the Complaint.

## V.     COUNT I – DECLARATORY JUDGMENT

37.     In response to paragraph 37 of the Complaint, Ms. Argo repeats and incorporates herein by reference, as though set forth in full, her responses to paragraphs 1 through 36 of the Complaint.

38.     The allegations in paragraph 38 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is required, Ms. Argo denies the allegations in paragraph 38.  Ms. Argo further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

39.     The allegations in the first sentence of paragraph 39 of the Complaint state a legal conclusion as to which no response is required.  If and to the extent a response is required, Ms. Argo denies the allegations in the first sentence of paragraph 39.  In response to the second sentence of paragraph 39, Ms. Argo respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.  With respect to the third sentence of paragraph 39, Ms. Argo admits that she pleaded guilty to a single count of securities fraud, and respectfully refers the Court to Ms. Argo's plea allocution, which contains a complete and accurate statement of its contents.  Otherwise, Ms. Argo denies the allegations in the third sentence of paragraph 39.

40.     The allegations in paragraph 40 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is required, Ms. Argo denies the allegations in paragraph 40.  Ms. Argo further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

41.     The allegations in paragraph 41 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is required, Ms. Argo denies the allegations in paragraph 41.  Ms. Argo further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

42.     The allegations in paragraph 42 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is required, Ms. Argo denies the allegations in paragraph 42.  Ms. Argo further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

43.     The allegations in paragraph 43 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is required, Ms. Argo denies the allegations in paragraph 43.  Ms. Argo further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

44.     The allegations in paragraph 44 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is required, Ms. Argo denies the allegations in paragraph 44.  Ms. Argo further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

45.     The allegations in paragraph 45 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is required, Ms. Argo denies the allegations in paragraph 45.  Ms. Argo further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue.

46.     With respect to the allegations in paragraph 46 of the Complaint, Ms. Argo admits only that claims have been presented to Federal for coverage, but denies the truth of the remaining allegations set forth in paragraph 46.

47.     Paragraph 47 states a legal conclusion as to which no response is required.

## V.     COUNT 2 - RESCISSION

48.     In response to paragraph 48 of the Complaint, Ms. Argo repeats and incorporates herein by reference, as though set forth in full, her responses to paragraphs 1 through 47 of the Complaint.

49.     In response to paragraph 49 of the Complaint, Ms. Argo admits that SafeNet has filed forms with the SEC addressing the issues described in paragraph 49, but Ms. Argo denies all other factual allegations to the extent they are inconsistent with the actual statements within the forms SafeNet filed with the SEC and to the extent they state legal conclusions.  The allegation in paragraph 49 with respect to the definition of  "SafeNet's Application for the Initial Excess Policy" states a legal conclusion to which no response is required.  If and to the extent a response is required, Ms. Argo denies this allegation.

50.     The allegations in paragraph 50 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is required, Ms. Argo denies the allegations in paragraph 50.

51.     Ms. Argo is without knowledge or information sufficient to form a belief about the allegations in paragraph 51 of the Complaint.

52.     With respect to paragraph 52, Ms. Argo admits that she pleaded guilty to a single count of securities fraud and respectfully refers the Court to Ms. Argo's plea allocution, which contains a complete and accurate statement of its contents.  Otherwise, Ms. Argo denies the allegations in paragraph 52.

53.     With respect to paragraph 53 of the Complaint, Ms. Argo admits that she has received a copy of the Complaint, which purports to state a claim for rescission of the Initial Excess Policy, and that Federal purports to offer to return some or all of the premium SafeNet paid for the Initial Excess Policy in the event of rescission.  Ms. Argo denies that the Complaint is effective "Notice of Rescission" and denies that the purported offer by Federal to return some or all of the premium to SafeNet is timely or adequate.  Ms. Argo further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue, as Ms. Argo avers that the 2006-2007 Primary and Excess Polices apply to the Claims at issue.

54.     The allegations in paragraph 54 of the Complaint state legal conclusions as to which no response is required.  If and to the extent a response is required, Ms. Argo denies the allegations in paragraph 54.  Ms. Argo further denies that the Initial Primary Policy and the Initial Excess Policy apply to the Claims at issue, as Ms. Argo avers that the 2006-2007 Primary and Excess Polices apply to the Claims at issue.

## DEFENDANT ARGO'S AFFIRMATIVE DEFENSES

55.     Federal is not entitled to the relief sought in the Complaint because the 2006-2007 Primary and Excess Policies apply to the Claims at issue, not the 2005-2006 Primary and Excess Policies.  Federal has failed to state a claim upon which relief may be granted with respect to the 2006-2007 Excess Policy.

56.     Federal waived any rights it may have had to deny coverage under the 2006-2007 Excess Policy, or to seek to rescind the 2006-2007 Excess Policy.

57.     Federal is not entitled to the relief sought in the Complaint because Federal, by reason of its conduct, is estopped from denying coverage under, or seeking to rescind, the 2006-2007 Excess Policy.

## DEFENDANT ARGO'S FIRST COUNTER-CLAIM FOR DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201 WITH RESPECT TO COVERAGE UNDER THE 2006-2007 EXCESS POLICY

58.     Ms. Argo repeats and re-alleges paragraphs 1 through 57 of this Answer, Affirmative Defenses and Counterclaims as though fully set forth herein.

59.     Upon information or belief, on or about February 28, 2006, SafeNet gave notice to Federal of certain circumstances that might reasonably have been expected to give rise to a Claim pursuant to Section 7(c) of the Initial Primary Policy.  These circumstances solely concerned accounting issues related to an understatement of lease restructuring charges and an understatement of costs of revenue in SafeNet's classified government business program as described in a Form 8-K that SafeNet filed with the SEC dated February 8, 2006 (these accounting issues are hereinafter referenced as "Lease and Costs Claims").  Upon information

and belief, Federal explicitly limited its acceptance of this notice to the circumstances described in the February 8, 2006 Form 8-K.

60.     During the March 12, 2006 to March 12, 2007 policy period for the 2006-2007 Excess Policy, civil and criminal investigations were initiated, and several shareholder derivative actions and class action lawsuits, including but not limited to the Securities Class Action Litigation, were filed against SafeNet, Ms. Argo, and directors and other officers of SafeNet related to stock options granted by SafeNet to a number of directors and officers (together these investigations, actions and lawsuits are defined as the "Stock Option Claims").  Upon information and belief, SafeNet promptly notified National Union and Federal of the claims. Ms. Argo also independently notified National Union of potential claims.

61.     Although the Securities Class Action Litigation initially contained allegations related to both the Stock Option Claims and Lease and Costs Claims, the latter allegations were subsequently dismissed.  (Opinion and Order, *Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.*, 06 Civ. 5797 (PAC) (S.D.N.Y. Aug. 5, 2009)).

62.     The Stock Option Claims are covered under the Insuring Agreements and related terms of the 2006-2007 Primary and Excess Policies.

63.     Upon information and belief, SafeNet has paid more than $45 million in Loss (as defined under the 2006-2007 Primary and Excess Policies) in connection with the defense and settlement of the Stock Option Claims.

64.     Ms. Argo has potential Loss in connection with the Stock Option Claims, such as legal fees and expenses incurred in connection with the investigations, derivative actions and Securities Class Action Litigation.

65.     The 2006-2007 Primary and Excess Policies are the operative policies applicable to coverage for the Stock Option Claims, as the Stock Option Claims were first made during the 2006-2007 Policy Period.  Ms. Argo is an insured and a beneficiary of the 2006-2007 Excess Policy.

66.     Upon information and belief, prior to filing its Complaint on September 11, 2009, Federal did not communicate to SafeNet an intent to rescind and/or deny coverage under the 2006-2007 Excess Policy, despite being in possession of the facts upon which it bases its Complaint since as early as October 5, 2007, and therefore has waived and is estopped from asserting any right to deny coverage or to rescind the 2006-2007 Excess Policy.

67.     In the alternative, if Federal neither has waived nor is estopped from asserting the right to rescind the 2006-2007 Excess Policy, SafeNet and Ms. Argo aver that no information contained within SafeNet's public filings was materially false for purposes of the Severability Provision in Endorsement No. 7 of the 2006-2007 Primary and Excess Policies.

68.     Upon information and belief, the covered loss of the parties insured under the 2006-2007 Primary and Excess Policies far exceeds the $10 million limit of liability of the underlying 2006-2007 Primary Policy and the limit of liability of the 2006-2007 Excess Policy. Federal's liability has been triggered under the 2006-2007 Excess Policy.

69.     Upon information and belief, Ms. Argo avers that SafeNet has paid all premiums for and complied with all the terms and conditions of the 2006-2007 Excess Policy and/or is excused from such compliance because of Federal's actions.

70.     Ms. Argo seeks declaratory relief, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 because an actual and justiciable controversy has arisen and now exists between Federal and Ms. Argo as to their respective rights and obligations under the 2006-2007 Excess Policy.  A judicial declaration is necessary and appropriate at this time under the circumstances to determine the respective rights and obligations of the parties under the Policies.

## DEFENDANT ARGO'S SECOND COUNTER-CLAIM FOR DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201 WITH RESPECT TO COVERAGE UNDER THE 2005-2006 EXCESS POLICY

71.     Ms. Argo pleads her Second Counter-Claim in the alternative.

72.     Ms. Argo repeats and re-alleges paragraphs 1 through 71 of this Answer, Affirmative Defenses and Counterclaims as though fully set forth herein.

73.     Federal has accepted that the Stock Option Claims and the Lease and Costs Claims are considered made at the time of the notice of circumstances SafeNet provided to Federal on or about February 28, 2006 -- that is within the March 12, 2005 to March 12, 2006 Policy Period of the 2005-2006 Excess Policy.

74.     The Stock Option Claims and the Lease and Costs Claims are covered under the Insuring Agreements and related terms of the 2005-2006 Primary and Excess Policies.  Ms. Argo is an insured and a beneficiary of the 2005-2006 Excess Policy.

75.     Upon information and belief, SafeNet has paid more than $45 million in Loss (as defined under the 2005-2006 Primary and Excess Policies) in connection with the defense and settlement of the Stock Option Claims and the Lease and Costs Claims.

76.     Ms. Argo has potential Loss in connection with these claims, such as legal fees and expenses incurred in connection with the investigations, derivative actions and Securities Class Action Litigation.

77.     Accordingly, the covered loss of the parties insured under the 2005-2006 Primary and Excess Policies far exceeds the $10 million limit of liability of the underlying 2005-2006 Primary Policy and the limit of liability of the 2005-2006 Excess Policy.  Federal's liability has been triggered under the 2005-2006 Excess Policy.

78.     Upon information and belief, Ms. Argo avers that SafeNet has paid all premiums for and complied with all the terms and conditions of the 2005-2006 Excess Policy, and/or is excused from such compliance because of Federal's actions.

79.     Ms. Argo seeks declaratory relief, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, because an actual and justiciable controversy has arisen and now exists between Federal and Ms. Argo as to the respective rights and obligations of Federal and Ms. Argo under the 2005-2006 Excess Policy.  A judicial declaration is necessary and appropriate at this time under the circumstances to determine the respective rights and obligations of the parties under the Policies.

## DEFENDANT ARGO'S THIRD COUNTER-CLAIM FOR BREACH OF CONTRACT

80.     Ms. Argo repeats and re-alleges paragraphs 1 through 79 of this Answer, Affirmative Defenses and Counterclaim as though fully set forth herein.

81.     Federal has a contractual duty under the either the 2006-2007 Excess Policy or the 2005-2006 Excess Policy to pay SafeNet and the other Insureds for loss arising from the Stock Option Claims in excess of the attachment point ($10 million under the Primary Policies plus the applicable retention), up to the limit of liability under respective Excess Policy.

82.     Ms. Argo has potential Loss in connection with the Stock Option Claims, such as legal fees and expenses incurred in connection with the investigations, derivative actions and Securities Class Action Litigation.

83.     SafeNet's payment of more than $45 million to defend and settle the Stock Option Claims constitutes Loss as defined under both the 2006-2007 Primary and Excess Policies and the 2005-2006 Primary and Excess Policies.

84.     Accordingly, the covered loss of the parties far exceeds the $10 million limit of liability of the underlying Primary Policies and the attachment point for the Excess Policies.

85.     Federal's denial of coverage and/or attempted rescission were wrongful, and Federal is obligated under the 2006-2007 Excess Policy or the 2005-2006 Excess Policy to pay SafeNet and the other Insureds for loss in excess of the attachment point ($10 million under the Primary Policies plus the applicable retention), up to the limit of liability under respective Excess Policy.

86.     Upon information and belief, Ms. Argo avers that SafeNet has paid all premiums for and complied with all the terms and conditions of the 2006-2007 Excess Policy and 2005-2006 Excess Policy, and/or is excused from such compliance because of Federal's actions.  Ms. Argo is an insured and a beneficiary under both policies.

87.     As a direct and proximate result of Federal's contractual and anticipatory breach of either the 2006-2007 Excess Policy or the 2005-2006 Excess Policy, Ms. Argo has suffered, and may suffer, substantial monetary damages, including the costs and attorneys fees in connection with this suit.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Argo respectfully requests that this Court grant judgment in her favor and against Federal as follows:

1.     With respect to Count I, for a Declaratory Judgment that:

    (a)     The 2006-2007 Excess Policy is the operative policy applicable to SafeNet's and Ms. Argo's pursuit of coverage for the settlement of the Stock Option Claims;

    (b)     Federal has waived its right to rescind the 2006-2007 Excess Policy;

    (c)     In the alternative, if Federal has not waived the right to rescind the 2006-2007 Excess Policy, the information contained within SafeNet's public filings during the relevant time period was not materially false for purposes of the Severability Provision in Endorsement No. 7 of the 2006-2007 Primary and Excess Policies;

    (d)     Coverage is provided under the 2006-2007 Excess Policy for Loss Ms. Argo has or will incur arising out of the Stock Option Claims; and

    (e)     Coverage has attached under the 2006-2007 Excess Policy regardless of whether National Union has paid in full the amount of the Underlying Limit for the Policy Period.

2.     With respect to Count II, for a Declaratory Judgment that:

(a)     The information contained within SafeNet's public filings during the relevant time period was not materially false for purposes of the Severability Provision of the 2005-2006 Primary and Excess Policies;

(b)     Coverage is provided under the 2005-2006 Excess Policy for Loss Ms. Argo has or will incur arising out of the Stock Option Claims and the Lease and Costs Claims; and

(c)     Coverage has attached under the 2005-2006 Excess Policy regardless of whether National Union has paid in full the amount of the Underlying Limit for the Policy Period.

3.     With respect to Count III, Ms. Argo requests that the Court enter judgment against Federal and award Ms. Argo:

(a)     actual money damages according to proof at trial, plus interest according to law.

4.     For attorneys' fees and costs incurred in this matter.

5.     For interest on all sums where properly owed.

6.     For costs of suit incurred herein.

7.     For any and all such other relief as the Court deems just and proper.

Dated:  January 19, 2011                    WILMER CUTLER PICKERING HALE & DORR LLP


                                            s/ Matthew Holmwood

                                            Matthew Holmwood (*Pro Hac Vice*)
                                            WILMER CUTLER PICKERING HALE & DORR LLP
                                            1875 Pennsylvania Avenue, NW
                                            Washington, DC 20006
                                            Tel:  (202) 663-6449
                                            Fax:  (202) 663-6363
                                            matthew.holmwood@wilmerhale.com

                                            *Attorney for Defendant, Carole D. Argo*