IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | Civ. Action No. 09-CV-7863-NRB |
| v. | ) ) | |
| SAFENET, INC.; et al., | ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANT SAFENET'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

REED SMITH LLP
599 Lexington Avenue - 22nd Floor
New York, New York 10022
Tel: (212) 521-5400
Fax: (212) 521-5450

*Attorneys for Defendant, SafeNet, Inc.*

# **TABLE OF CONTENTS**

Page

I. ARGUMENT ...........................................................................................................1

    A. Delaware Law Should Apply to this Dispute. ..........................................................1

    B. Federal Waived Its Right to Rescind the 2006-07 Federal Excess Policy by Failing to Promptly Give Notice and Take Action to Rescind That Policy............2

    C. The Stock Option Back-Dating Issues in the Class Action Constitute a Separate "Claim" That Falls Under the 2006-07 Policies. ......................................3

    D. Defendants are Entitled to Summary Judgment as Federal Fails to Proffer Evidence That the Alleged Misrepresentations Impacted Its Underwriting of the Policies............................................................................................................5

    E. Exclusion 4(c) Does Not Preclude Coverage for SafeNet or Argo. .......................7

    F. To Constitute a Covered "Loss" Under the Policies, SafeNet Need Not Address the Indemnification of Any Insured Persons. ............................................9

    G. Defendants were not Required to Seek Federal's Consent to the Settlement because Federal Denied Coverage. ........................................................................10

## TABLE OF AUTHORITIES

**CASES**

*AT&T Corp. v. Clarendon Am. Ins. Co.*,
   931 A.2d 409 (Del. 2007) .................................................................................................. 10

*AT&T Corp. v. Faraday Cap. Ltd.*,
   918 A.2d 1104 (Del. 2007) ................................................................................................ 4, 5

*DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 958 (Del. 2005) ........................................ 7

*Dickson-Witmer v. Union Bankers Ins. Co.*,
   Civ. A. No. 92C-07-107, 1994 WL 164554 (Del. Super. Ct. Apr. 27, 1994) ........................... 6

*Goode v. Alexander Hamilton Life Ins. Co. of Am.*,
   No. CIV. A. 92C-03-256, 1995 WL 347365 (Del. Super. Ct. Jan. 5, 1995) ............................ 7

*Home Ins. Co. v. Spectrum Info. Tech.*,
   930 F. Supp. 825 (E.D.N.Y. 1996) .................................................................................... 4, 5

*Old Republic Ins. Co. v. Rexene Corp.*,
   Civ. A. Nos. 10,970, 1990 WL 176791 (Del. Ch. Nov. 5 1990) ............................................ 6

*Pacific Ins. Co. v. Higgins*,
   No. CivA 11284, 1994 WL 163635 (Del. Ch. Apr. 25, 1994) ............................................ 3, 7

*Scottsdale Ins. Co. v. Nat'l Ctr. on Insts. & Alternatives, Inc.*,
   No. Civ. WDQ-04-2356, 2005 WL 1367079 (D. Md. Jun. 7, 2005) ...................................... 8

*Seidel v. Houston Cas. Co.*,
   375 F. Supp. 2d 211 (S.D.N.Y. 2005) .................................................................................... 1

*Seneca Ins. Co. v. Kemper Ins. Co.*,
   Case No. 02-Civ. 10088 (PKL), 2004 WL 1145830 (S.D.N.Y. May 21, 2004) .................. 4, 5

*Shook v. Hertz Corp., et al.*,
   349 A.2d 874 (Del. Super. Ct. 1975) .................................................................................... 11

*The Mills Limited P'ship, et al. v. Liberty Mut. Ins. Co.*,
   C.A. No.: 09C-11-174 FSS (slip opinion) (Del. Sup. Ct. Nov. 5, 2010) (Memorandum Opinion and Order) ............................................................................................................................... 1

*TLC Beatrice Int'l Holdings, Inc. v. CIGNA Ins. Co.*,
   No. 97, Civ. 8589, 2000 WL 282967 (S.D.N.Y. Mar. 16, 2000) .......................................... 11

**STATUTES, RULES AND REGULATIONS**

18 Del. Code § 2711 .................................................................................................................... 7

26 U.S.C. §§ 7201 & 7203 .................................................................................................... 9

Md. Ins. Code §12-207 ........................................................................................................ 7

Defendant, SafeNet, Inc. ("SafeNet"), submits this Memorandum of Law in further support of its Cross-Motion for Summary Judgment against Plaintiff, Federal Insurance Company ("Federal").

## I.   ARGUMENT

### A.   Delaware Law Should Apply to this Dispute.

Federal wrongly asserts that the "center of gravity" approach to conflicts of law clearly results in the application of Maryland law because, Federal argues, the most important factor is the location of the insured risk. Yet Federal fails to cite a single case considering that factor with respect to a D&O policy,[1] where the insured risk is the conduct of the directors and officers of the corporation and their compliance with fiduciary duties determined under the law of the state of incorporation. *The Mills Limited Partnership, et al. v. Liberty Mut. Ins. Co.* decision ruled on precisely this issue, relying on more than just the policy's ADR choice of law provision.

> When the insured risk is the directors' and officers' honesty and fidelity to the corporation, and the choice of law is between headquarters or the state of incorporation, the state of incorporation has the most significant relationship.

C.A. No.: 09C-11-174 FSS (slip opinion at 16) (Del. Sup. Ct. Nov. 5, 2010) (Memorandum Opinion and Order). Admittedly *Mills* is a Delaware opinion, yet Federal cites no New York precedential authority which would dictate a different result. Because SafeNet is incorporated in Delaware, Delaware law should be applied to any issues concerning the liability of SafeNet's directors and officers. AVK Dec., Ex. 1; SMF 1; KH Aff. ¶ 11. As explained below, however, even if the Court were to apply Maryland law, Defendant's Cross-Motion for Summary Judgment should still be granted.

---

[1] Federal cited one case involving a D&O policy, but its choice of law analysis rested on a conflict related solely to the policyholder's ability to recover legal fees in its action against its insurer – not on a conflict regarding the directors' and officers' liability under the applicable D&O policy. *Seidel v. Houston Casualty. Co.*, 375 F. Supp. 2d 211, 219, n. 13 (S.D.N.Y. 2005).

### B. Federal Waived Its Right to Rescind the 2006-07 Federal Excess Policy by Failing to Promptly Give Notice and Take Action to Rescind That Policy.[2]

Federal severely misrepresents SafeNet's waiver argument to the Court, contending in its Reply and Opposition that SafeNet is arguing that Federal has waived its rights: (i) "to assign the Underlying Litigation to . . . the appropriate Policy Period," (ii) "to decline coverage for the Underlying Litigation," and (iii) "to rescind the applicable Excess Policy by taking the position that it is the 2005-2006 Policy that applies instead of the 2006-07 Policy." Fed. Reply/Opp. at 3, 5. SafeNet made none of these arguments.

SafeNet actually contends that Federal waived its right to rescind the 2006-07 Federal Excess Policy by failing to promptly (i) notify SafeNet of an intent to rescind that policy and (ii) take any action to rescind that policy, once it learned of facts providing a potential basis for rescission (*i.e.*, Argo's October 5, 2007 guilty plea). Federal's repeated citation to various reservation of rights letters as evidence of its prompt action is entirely irrelevant, as not a single letter notified SafeNet that Federal would seek rescission of the 2006-07 Federal Excess Policy. AVK Dec., Exs. 12, 20, 22-23; RRJ Dec. I, Ex. M; RRJ Dec. II, Ex. A.[3] Federal had every opportunity to address rescission as to both policies, but instead chose to seek to rescind only the earlier policy. Its July 27, 2008 and August 12, 2008 letters clearly discuss rescission of the 2005-06 policy, yet are silent as to rescission of the 2006-07 policy. AVK Dec., Exs. 22-23. Federal's later cursory references to the 2006-07 Federal Excess Policy in its Demand for Mediation and Complaint are nothing more than untimely and insufficient attempts to salvage its

---

[2] Federal alleges there is a "conflict" between SafeNet's positions on rescission and the denial of coverage. *See infra* Section I.G. A comparison of SafeNet's actual positions and the relevant legal standards reveals no such conflict. Federal can (and did) deny coverage, while at the same time failing to properly and promptly rescind.

[3] Moreover, Federal cannot hide behind a reservation of rights in order to escape its duty to act promptly with respect to rescission. The applicable doctrine requires prompt notification and prompt action, not a prompt reservation of rights.

earlier lost opportunities. Federal cannot now escape the reality it created, in which its notifications and actions are confined to rescission of only the 2005-06 Federal Excess Policy, and it is therefore precluded from seeking to rescind the 2006-07 Federal Excess Policy.[4]

### C. The Stock Option Back-Dating Issues in the Class Action Constitute a Separate "Claim" That Falls Under the 2006-07 Policies.

The critical point Federal tries to convince the Court to overlook is that a single lawsuit (*i.e.*, the Class Action) can contain <u>more than one Claim</u>, such that individual Claims can fall under different policies. In this case, the stock option back-dating issues constitute one Claim and the non-options related accounting practices constitute a second, unrelated Claim.

The cases relied upon by SafeNet note that where the term "claim" is defined in the policy to include both "demands" and "proceedings," it is possible to have a "claim" without the institution of a suit (*e.g.*, by a simple demand without litigation), and vice versa, to have a suit without a "claim" (*e.g.*, by the institution of a proceeding where there has been no demand). Because the plain language of the policy recognizes a distinction between "claims" and "suits," it therefore follows that one lawsuit is not automatically limited to one "claim." A single lawsuit can contain multiple causes of action, each of which can constitute a separate "claim" if they are based on different sets of wrongful acts. *See AT&T Corp. v. Faraday Cap. Ltd.*, 918 A.2d 1104, 1107-09 (Del. 2007); *Seneca Ins. Co. v. Kemper Ins. Co.*, Case No. 02-Civ. 10088 (PKL), 2004 WL 1145830, at *5 (S.D.N.Y. May 21, 2004); *Home Ins. Co. v. Spectrum Info. Tech.*, 930 F.

---

[4] In contrast to its claims, Federal also failed to fulfill its duty to promptly return the any of the premium, as to either the 2005-06 or 2006-07 Federal Excess Policies. Federal offered to do so for the first time in its Motion filed on February 4, 2011, long past what would be considered "prompt," following receipt of information providing a potential basis for rescission (*i.e.*, Argo's October 5, 2007 guilty plea) and in stark contrast to the requirements of either Delaware or Maryland law. *See, e.g., Pacific Ins. Co. v. Higgins*, No. CivA 11284, 1994 WL 163635, at *7 (Del. Ch. Apr. 25, 1994); *Hartford Acc. & Indem. Co., et al. v. Sherwood Brands, Inc.*, 680 A.2d 554, 562 (Md. Ct. Spec. App. 1996), *cert. granted*, 685 A.2d 450 (Md. 1996), *judgment vacated on other grounds*, 698 A.2d 1078 (Md. 1997).

Supp. 825, 833, 845-47 (E.D.N.Y. 1996). There is no indication that Maryland law (if applicable, which SafeNet disputes) would require a different result.[5]

In its attempt to distinguish SafeNet's cases, Federal selectively quotes from the definition of "Claim" in its Policies, as "'a civil ... proceeding for monetary, non-monetary or injunctive relief which is commenced by ... service of a complaint or similar pleading[.]'" (Fed. Reply/Opp. at 12) apparently hoping to obscure the fact that the definition, in full, is <u>the same</u> as the definitions in the cases SafeNet relies upon.[6] The Policies define Claim as:

(1) A written *demand* for monetary, non-monetary or injunctive relief;

(2) A civil, criminal, administrative, regulatory or arbitration *proceeding* for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges; or

(3) A civil, criminal, administrative or regulatory investigation or an Insured Person: (i) once such Insured Person is identified in writing by such investigating authority as a person against whom a proceeding described in Definition (b)(2) may be commenced; or (ii) in the case of an investigation by the SEC or a similar state or foreign government authority, after the service of a subpoena upon such Insured Person.

RRJ Dec. I, Exs. B, D at Sec. II(b)(1)-(3) (emphasis added). The policies in the cases SafeNet relies upon likewise define Claim as including "demands" and "proceedings." *See AT&T Corp.*, 918 A.2d at 1107; *Seneca Ins. Co.*, 2004 WL 1145830, at *5; *Spectrum Info. Tech.*, 930 F. Supp.

---

[5] As SafeNet demonstrated in its initial brief, the Class Action originally contained two distinct Claims pled in separate causes of action – one Claim consisting of the stock option back-dating issues and one Claim consisting of the non-options related accounting practices. RRJ Dec., Ex. H; SMF 17. The Amended Complaint continued to clearly distinguish between these two types of Claims. AVK Dec., Ex. 24; SMF 30. And, of course, all of the Claims regarding the non-options related accounting practices were dismissed well before the Class Action settlement. AVK Dec., Exs. 25, 27; SMF 31-33. The Claims encompassing the stock option back-dating issues fall under the 2006-07 Policies as they were first made during that policy period (and they do not relate to the accounting practices Claims or relate-back to the February 2006 Notice of Circumstances, as explained in the remainder of this section).

[6] Federal's parallel argument regarding the common law definition of "claim" is incorrect and misleading, as neither SafeNet nor the cases SafeNet relies upon base their logic or conclusions on common law, but instead on the way in which the term "claim" is defined in the applicable policies.

at 833, 845-47. Federal's basis for distinguishing SafeNet's cases is entirely without merit.

Because the stock option back-dating issues and the non-options related accounting practices constitute separate Claims, the rest of Federal's arguments regarding relatedness and relation-back fall away. Federal cannot prevail on an argument that the stock option back-dating Claim either (i) relates to the accounting practices Claim, or (ii) relate back to the February 2006 Notice of Circumstances. Federal's own actions belie the truth of any such assertions. Federal placed other suits involving <u>only</u> the stock option back-dating issues (*e.g.*, the Derivative Lawsuits) under the 2006-07 Federal Excess Policy <u>without raising relatedness or relation-back</u>. RRJ Dec. I, Exs. A, G, M; AVK Dec., Ex. 22; AVK Dec. II, Ex. 28.[7] If those Claims had had any relation to the accounting practices Claims or related back to the Lease and Cost of Revenue Issues in the February 2006 Notice of Circumstances, Federal would have placed them under the 2005-06 Federal Excess Policy.[8] Federal did not do so, evincing its own recognition that the Stock Option Back-Dating Claims are neither related to the accounting practices Claims, nor do they relate back to the Lease and Cost of Revenue Issues in the February 2006 Notice of Circumstances. Coverage is therefore not precluded under Exclusion 4(d) or Endorsement 15.

### D. Defendants are Entitled to Summary Judgment as Federal Fails to Proffer Evidence That the Alleged Misrepresentations Impacted Its Underwriting of the Policies.

In its Cross-Motion and Opposition, SafeNet demonstrated that even if Federal is found not to have waived its right to rescind the 2006-07 Federal Excess Policy, Federal failed to meet

---

[7] Until its Reply and Opposition, Federal had <u>never</u> raised the notion that the Derivative Lawsuits would be excluded from coverage under the 2006-07 Policies and instead fall under the 2005-06 Policies. This turnabout is contrary to all of Federal's prior correspondence regarding those lawsuits, and, clearly, a desperate attempt to salvage its relatedness and relation-back arguments.

[8] Federal again repeats that it reserved all of its rights to later re-assign Claims to different Policy Periods, which is not only unavailing but disingenuous. Federal cannot perpetually rely on a reservation of rights as an infinitely elastic basis to alter its coverage positions to suit its purpose of the moment.

the requisite standard for a rescission claim under Delaware law. The same is true even if Maryland law were to apply. Federal incorrectly contends, without explanation, that it need only prove one of the elements of a rescission claim under Delaware law – ignoring SafeNet's citation to authority suggesting that all three elements must be proven.[9] Federal then contends, again incorrectly, that it has proven all three. In fact, Federal addresses only two and proves none.

First, with respect to the insured's knowledge of alleged misrepresentations, Federal erroneously relies on Endorsement 4, instead of controlling law. Delaware requires insurers to prove that the insured must have known, or had reason to know, of the false information *contained within the insurance application* before rescinding the policy. *See Goode v. Alexander Hamilton Life Ins. Co. of Am.*, No. CIV. A. 92C-03-256, 1995 WL 347365, at *2 (Del. Super. Ct. Jan. 5, 1995) (unpublished opinion) (*citing Pacific Ins. Co.*, 1994 WL 163635, at *7). Federal fails to prove that either SafeNet or any insured, including Argo, had such knowledge.

Second, regarding whether or not the alleged misrepresentations were "material" as a question of fact or law, Federal cites a host of case law from other jurisdictions, none of which is binding under either Delaware or Maryland law. Federal further continues to confuse the materiality standard in the securities law context with that in the insurance context.

Third, and most glaring, Federal fails to proffer any evidence, let alone prove, that the alleged misrepresentations impacted its underwriting of the Policies, in that it would not have issued the Policies with the same terms, at the same premium, or at all, had it known of the alleged misrepresentations. This is a separate and distinct requirement for rescission under Delaware law, which Federal misleadingly attempts to merge with the materiality requirement

---

[9] *See Old Republic Ins. Co. v. Rexene Corp.*, Civ. A. Nos. 10,970, 10,979 1990 WL 176791, at *6 (Del. Ch. Nov. 5 1990) (unpublished opinion); *Dickson-Witmer v. Union Bankers Ins. Co.*, Civ. A. No. 92C-07-107, 1994 WL 164554, at *5 n.4 (Del. Super. Ct. Apr. 27, 1994) (unpublished opinion).

(whose language permits proof of materiality as to the insurer's acceptance of the risk *or* the hazard assumed by the insurer). *See e.g., DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 958 (Del. 2005); 18 Del. Code § 2711; Fed. Reply/Opp. at 21, n. 18. Federal's attempt to avoid this required third element (for which it coincidentally provides no authority or evidence) fails and precludes summary judgment.

Even if the Court were to apply Maryland law, as Federal suggests, Federal still fails to meet the requisite rescission standard. As Federal concedes in its own Motion, Maryland (like Delaware) requires an insurer to prove that the alleged misrepresentation, if known, would have affected the insurer's determination of the acceptability of the risk. *See* Md. Ins. Code §12-207; *Scottsdale Ins. Co. v. Nat'l Ctr. on Insts. & Alternatives, Inc.*, No. Civ. WDQ-04-2356, 2005 WL 1367079, at *2 (D. Md. Jun. 7, 2005); Fed. Motion at 17. Federal put forth no evidence to prove this element of rescission and, therefore, is not entitled to summary judgment.

E.  **Exclusion 4(c) Does Not Preclude Coverage for SafeNet or Argo.**

As demonstrated in SafeNet's Cross-Motion, no exclusion forecloses coverage for the Loss SafeNet paid on its own behalf, or on behalf of its officers and directors, including Argo. First articulated in its reply papers, Federal's new arguments about Exclusion 4(c) (as modified by Endorsement 3 of the 2006-07 policy or Endorsement 2 of the 2005-06 policy), the "Deliberate Criminal or Fraudulent Acts Exclusion," ignore the policy's plain language and relevant cases.

As to SafeNet, it is undisputed that no "judgment or final adjudication or an alternative dispute resolution proceeding adverse to the Insured" has occurred. The plain language of Exclusion 4(c), as modified by Endorsement 3, renders it irrelevant to SafeNet. Federal further fails to contest that the Imputation Provision was either (i) eliminated in its entirety by Endorsement 3 (which replaced Exclusion 4(c) and included no imputation provision), or (ii) if

- 7 -

not eliminated, inapplicable in that it only permits the imputation of "facts" and "knowledge" to SafeNet, not "a judgment or final adjudication," as required by Endorsement 3's revision. Instead of addressing these issues, Federal makes the nonsensical argument that the <u>absence</u> of an Imputation Provision allows the knowledge of one Insured to be imputed to all other Insureds, <u>without limitation</u>. In the absence of an Imputation Provision, the only logical result, is no imputation.

As to Argo, two issues remain in dispute: (i) whether Exclusion 4(c) is enforceable as to liability of directors and officers in a securities case, and (ii) whether Argo's guilty plea and judgment constitute a final adjudication sufficient to trigger Exclusion 4(c). As to the first issue, Federal makes a disctinction without a difference; the holding in *Alstrin* v. *St. Paul Mercury Ins. Co.* did not depend on whether the exclusion contained an "in fact" standard. *See* 179 F. Supp. 2d 376, 396 (D. Del. 2002). Moreover, none of the cases cited by Federal refute *Alstrin's* holding. To the contrary, *AT&T v. Clarendon America Ins. Co.* adopts its holding. *See* Case No. 04C-11-167-JRJ, 2008 WL 2583007, at *8 (Del. Super. Jun. 25, 2008) ("There is no dispute that the [] policy expressly provides coverage for securities claims. Under the circumstances here, to hold the Fraud Exclusion applicable to such claims would effectively eviscerate the purpose of the policy.") (*citing Alstrin*, 179 F. Supp. 2d at 398). Regarding the second issue, the "judgment" language of Exclusion 4(c) (as amended by Endorsement 3) requires Federal to establish a "*deliberate* criminal or *deliberate* fraudulent act" (emphasis added) based on the necessary findings of the judgment or final adjudication. *See In re Donald Sheldon & Co., Inc.*, 186 B.R. 364, 369-70 (S.D.N.Y. 1995), *aff'd*, No. 98-5040, 1999 WL 459778, at *1 (2d Cir. June 22, 1999) (rejecting insurer's argument that court consider whether evidence would have *permitted* finding of dishonesty, in addition to the findings *necessary* to the prior adjudication).

As mere reckless misconduct can constitute criminal securities fraud, the judgment with respect to Argo is insufficient to establish that she committed any deliberate criminal or deliberate fraudulent acts and trigger Exclusion 4(c). *See United States v. Tarallo*, 380 F.3d 1174, 1188-89 (9th Cir. 2004); *see also United States v. Desantis*, 134 F.3d 760, 764 (6th Cir. 1998); *United States v. Natelli*, 527 F.2d 311, 322-23 (2d Cir. 1975).[10] Federal could have negotiated different language, *see In re Donald Sheldon*, 189 B.R. at 370, but instead agreed to an endorsement that limited review and required a "deliberate" criminal or fraudulent act rather than "any" criminal or fraudulent act.

### F. To Constitute a Covered "Loss" Under the Policies, SafeNet Need Not Address the Indemnification of Any Insured Persons.

Federal's silence in its Reply and Opposition concedes that SafeNet and the Other Class Action Defendants have suffered a covered "Loss" in connection with defense costs and the settlement amount, as they remained "financially liable" and subject to "legal recourse" for such amounts. *See AT&T Corp. v. Clarendon Am. Ins. Co.*, 931 A.2d 409 (Del. 2007). As the issue on summary judgment is whether or not a covered "Loss" exists, SafeNet need not demonstrate that it either did, or did not, indemnify any Insured Persons – indemnification merely concerns the applicable coverage part.[11]

---

[10] That the exclusion does not apply here does not mean that it would never apply; it would still bar coverage where the prosecution had to prove the defendant knew he was violating a specific law (*e.g.*, 26 U.S.C. §§ 7201 & 7203, criminal tax fraud provisions), a second common-sense interpretation of "deliberate" not met in this case.

[11] The Affidavit of Kevin Hicks is neither inconsistent with this fact, nor improper. It does not purport to opine on whether indemnification has been provided or on SafeNet's compliance with Delaware law. It merely states the approximate amounts paid as defense costs and for settlement. KF Aff. ¶¶ 4-6, 8.

G.  **Defendants were not Required to Seek Federal's Consent to the Settlement because Federal Denied Coverage.**

In an effort to escape the obvious meaning of its communications with its insureds, Federal now contends that it has not denied coverage because it reserved its rights and filed this declaratory action. These latter actions are irrelevant. Federal unequivocally denied all coverage to SafeNet and Argo, as well as all coverage for Indemnifiable Loss incurred by any other Insured Persons in its June 27, 2008 and August 12, 2008 letters. AVK Dec., Exs. 22-23; SMF 27, 29, 35. As the authorities SafeNet cited show, Federal's prior denial of coverage defeats its rights to notice and consent – without regard to any ongoing reservations of rights, continued requests for information, or suit for declaratory judgment. *See TLC Beatrice Int'l Holdings, Inc. v. CIGNA Ins. Co.*, No. 97, Civ. 8589, 2000 WL 282967, at *4 (S.D.N.Y. Mar. 16, 2000); *Shook v. Hertz Corp., et al.*, 349 A.2d 874, 877 (Del. Super. Ct. 1975).

In the alternative, whether or not Federal's June 27, 2008 and August 12, 2008 letters constitute a coverage denial is a contested issue of fact that survives summary judgment.

## CONCLUSION

For the reasons stated above, SafeNet respectfully requests that this Court deny Federal's Motion for Summary Judgment and grant SafeNet's Cross-Motion for Summary Judgment.

Date: April 5, 2011         By:    /s/ Ann V. Kramer
                                   Ann V. Kramer [AK6448]
                                   REED SMITH LLP
                                   599 Lexington Avenue - 22nd Floor
                                   New York, New York 10022
                                   Tel: (212) 205-6057
                                   Fax: (212) 521-5450
                                   akramer@reedsmith.com

                                   *Attorney for Defendant,*
                                   *SafeNet, Inc.*